**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CLIFF DETEMPLE d/b/a/      :
TURNING POINT SYSTEMS      :
GROUP,      :
     :
     Plaintiff,      :      CIVIL ACTION NO.
     :      1:09-CV-3272-RWS
v.      :
     :
LEICA GEOSYSTEMS, INC.,      :
     :
     Defendant.

## <u>ORDER</u>

This case comes before the Court on Defendant Leica Geosystems Inc.'s

Motion for Summary Judgment [36].  After reviewing the record, the Court

enters the following Order.

## Background

Defendant produces products and systems for surveying and geographical

measurement, as well as HDS laser scanners used by contractors and engineers

to capture dimensional data.[1]  In 2002, Plaintiff founded Turning Point Systems

Group.  In April 2003, Plaintiff and Defendant entered into a Distribution

---

[1] Unless otherwise noted, the facts are undisputed and are taken from Statement of Undisputed Facts in Support of Defendant Leica Geosystems Inc.'s Motion for Summary Judgment ("Def.'s SUF") [36-2].

Agreement ("Survey Contract") under which Plaintiff became a distributor of

Defendant's survey products in some, but not all, Wisconsin counties.  Plaintiff

entered into a separate Service Agreement, which authorized Plaintiff to carry

out certain after-sales service and repair for survey products that Plaintiff

purchased and sold under the Survey Contract.

Throughout 2006, Plaintiff missed his performance target under the

Survey Contract.  On July 14, 2006, Defendant wrote to Plaintiff and identified

Plaintiff's failure to meet his performance target as grounds for termination.

The letter informed Plaintiff of the steps he needed to take by the end of the

third quarter to avoid termination.  Plaintiff did not meet his performance target

for the third quarter.  Therefore, on September 29, 2006, Defendant notified

Plaintiff that it was terminating the Survey Contract and the Service Agreement,

effective 90 days from the date of the letter.  The termination notice cited

Plaintiff's failure to meet his performance target for three quarters as the

grounds for termination.

On March 28, 2008, Plaintiff sued Defendant in the Eastern District of

Wisconsin under the Wisconsin Fair Dealership Law ("WFDL").  He later

amended his complaint to include claims for breach of contract.  On June 24,

2

AO 72A
(Rev.8/82)

2009, the Wisconsin Court granted Defendant's motion to dismiss the WFDL claim, with prejudice, on grounds that the claim was time-barred.  The Court then found that the breach of contract claims should be filed in Georgia pursuant to the contracts' forum selection clauses, and dismissed those claims without prejudice.

On Plaintiff's motion for reconsideration, the Wisconsin Court vacated the portion of its judgment concerning the WFDL claim.  On reconsideration, the Court cited uncertainty about Plaintiff's active duty dates with the U.S. Coast Guard, which impacted the running of the WFDL's statute of limitations. The Court found that because it was addressing a Rule 12(b)(6) motion to dismiss, it was limited to consideration of the four corners of the complaint. Ultimately, the Court dismissed the WFDL claim without prejudice.  On November 20, 2009, Plaintiff filed this action in the Northern District of Georgia.

## Discussion

### I.    Legal Standard - Summary Judgment

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material

3

fact and the movant is entitled to judgment as a matter of law."  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable

4

to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

(11th Cir. 2002).  But, the court is bound only to draw those inferences which

are reasonable.  "Where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

## II.     Analysis

### A.     Wisconsin Fair Dealership Law (Count I)

Defendant argues that Plaintiff's WFDL claim is barred by a one-year

statute of limitations.  (Memorandum in Support of Defendant Leica

Geosystems Inc.'s Motion for Summary Judgment ("Def.'s MSJ Memo."), Dkt.

[36-1] at 6.)  The Court agrees that Plaintiff's WFDL claim is time barred.

Actions under the WFDL, Wisc. Stat. § 135.01, *et seq.*, are to be commenced within one year after the cause of action accrues.  Wisc. Stat. § 893.93(3)(b).  For a WFDL claim based on termination of a dealership by written notice, the statute of limitations begins to run when the alleged dealer receives the written notice of termination.  Les Moise, Inc. v. Rossignol Ski Co., Inc., 361 N.W.2d 653, 654 (Wis. 1985).  It is undisputed that Plaintiff received Defendant's written notice of termination on September 29, 2006. (Declaration of John M. Bowler, Dkt. [36-21] ¶ 2.)  Plaintiff filed his original complaint in the Eastern District of Wisconsin on March 28, 2008, well after the one-year period of limitations.  However, due to Plaintiff's military service, the inquiry does not end here.

Plaintiff is a Reservist in the United States Coast Guard and served on active duty in 2007.  Therefore, under the Servicemembers Civil Relief Act ("SCRA"), 50 App. U.S.C. § 501, *et seq.*, the WFDL statute of limitations was tolled during Plaintiff's military service.  SCRA § 526(a).[2]  "Military service" for purposes of the SCRA means "active duty" as defined in 10 U.S.C. §

---

[2] The period of a servicemember's military service may not be included in computing any period limited by law . . . for the bringing of any action or proceeding in a court . . . by or against the servicemember.

101(d)(1).  SCRA § 511(2)(A)(i).  Section 101(d)(1) defines "active duty" as

"full-time duty in the active military service of the United States."  Under

SCRA § 516(a), Reservists are also entitled to count toward tolling "the period

beginning on the date of the member's receipt of the order and ending on the

date on which the member reports for military service."

On April 23, 2012, under the Freedom of Information Act, Defendant

requested from the Coast Guard "documents sufficient to provide information

regarding [Plaintiff's] dates of active Coast Guard Service...between September

29, 2006 and March 28, 2008...for the purposes of receiving the benefits of the

Service Members Civil Relief Act..."  (U.S. Coast Guard FOIA Request

Response, Dkt. [36-14] at 2.)  The U.S. Coast Guard responded that Plaintiff

was on active duty for 176 days during that time period.  (Id.)  The actual dates

of Plaintiff's service were from March 28, 2007, to September 23, 2007.  (Id.)

The Coast Guard sent a follow-up letter regarding Defendant's FOIA inquiry on

June 26, 2012.  (U.S. Coast Guard FOIA Request Follow-up Response, Dkt.

[45-12] at 2.) The second letter stated that Plaintiff was recalled to active duty

for *180 days* during the relevant time period, but listed the same dates of

service.  Construing the facts in Plaintiff's favor, the Court uses 180 days as

7

Plaintiff's active duty period.  (<u>See also</u> Email from Philip C. Smith, U.S. Coast Guard, to Plaintiff, June 25, 2012, Dkt. [45-7] at 13 (noting that Plaintiff's records should be fixed to reflect "the 180 day active duty order stretch").)[3]

Plaintiff states that he received verbal orders to report for military service on March 15, 2007, and that he received written orders on March 26, 2007. These dates are undisputed.  It is also undisputed that Plaintiff reported for duty March 28, 2007.  Therefore, under SCRA §§ 526, 516, and 511, the period of limitations for Plaintiff's WFDL claim was tolled for either 182 days or 193

---

[3] The Court acknowledges Plaintiff's request to defer decision on the issue of his active-duty period.  (Plaintiff's Memorandum of Law in Opposition to Defendant Leica Geosystems, Inc.'s Motion for Summary Judgment ("Pl.'s Resp."), Dkt. [45] at 5-6.)  Plaintiff says that additional tolling days may apply if his days on Temporary Assigned Duty ("TAD") are counted as active duty time.  (<u>Id.</u>) He states that he is waiting for a determination from the U.S. Coast Guard on whether his TAD days should be counted, but he has not provided this Court with copies of his communications with the Coast Guard.

The Court declines to defer a decision on the issue.  The Coast Guard has stated in multiple communications that Plaintiff was on active duty for 180 days during the relevant time period.  Further, in its June 26, 2012 follow-up response to Defendant's FOIA request, the Coast Guard distinguishes between active duty and TAD.  In pertinent part, the letter reads, "DeTemple was *recalled to active duty* for the period of March 28, 2007, through September 23, 2007 – a 180 day recall . . . . *He was also given military Temporary Assigned Duty (TAD) orders . . . ."* (emphasis added). Thus, the Coast Guard already considered Plaintiff's TAD days and declined to include them in his active duty count.

8

days, depending on whether the clock started with the verbal or written orders. There is no case law on this point.

The only evidence presented by Plaintiff that he received verbal orders on March 15, 2008 is his own sworn affidavit.  (Affidavit of Clifford J. DeTemple, June 26, 2012, Dkt. [45-6] ¶ 3.)  Attached to his affidavit are the written orders sent to him by the U.S. Coast Guard, dated March 26, 2007 [45-6].  Defendant argues that Plaintiff's mere conclusory statement that he received verbal orders on March 15 is without corroboration from the Coast Guard and is insufficient to defeat Defendant's motion for summary judgment.  (Reply in Support of Leica Geosystems Inc.'s Motion for Summary Judgment ("Def.'s Reply"), Dkt. [53] at 3 n.2.)

The SCRA is to be "liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation."  Hurley v. Deutsche Bank Trust Co. Americas, 2009 WL 701006, at *5 (W.D. Mich. Mar. 13, 2009) (quoting Boone v. Lightner, 319 U.S. 561, 575 (1943)). However, the Eleventh Circuit has "consistently held that conclusory allegations without specific supporting facts have no probative value."  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting Evers v.

AO 72A
(Rev.8/82)

General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)).  "One who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial."  Id. (quoting Gossett v. Du-Ra-Kel Corp., 569 F.2d 869, 872 (5th Cir. 1978)).

In Leigh, a copyright and trademark case, the only evidence submitted by the plaintiff to establish the use of a photograph as a trademark prior to a certain date was plaintiff's own affidavit.  212 F.3d at 1217.  The affidavit asserted "that [the plaintiff] ha[d] used the photograph to promote his work since May 1994 and it mention[ed] the Southern Images Gallery by name, but it [was] devoid of any other detail."  Id.  The Circuit Court found that the affidavit was "little more than a brief, conclusory assertion of trademark usage" and concluded that the plaintiff had not provided any "specific facts" to create a genuine issue for trial.  Id.

Similarly, here, Plaintiff's affidavit says only: "On March 15, 2007, I received verbal orders to report for Active Duty on March 28, 2007."  Plaintiff provides no details regarding who told him to report or the content or extent of the conversation, and he has not produced any corroborating evidence.  The Court appreciates the importance of the requirement that the SCRA be liberally

10

construed to protect our nation's servicemembers, but the Court also recognizes that the rights of parties in disputes with servicemembers must be considered. Ricard v. Birch, 529 F.2d 214, 216 (4 Cir. 1975). The SCRA provides that the statute of limitations be tolled beginning on the date the servicemember receives the order. The order in this case was not issued until March 26 and was received the same day. By the plain language of the SCRA, this is the date the tolling period should begin. Moreover, use of recorded dates such as these provides certainty to all parties and allows a uniform application of the SCRA's protections for Reservists.

Based on the foregoing, the Court finds that SCRA tolling was triggered on March 26, 2007, the date Plaintiff's written orders were issued and received. The statute of limitations for Plaintiff's WFDL claim was tolled for 182 days and the claim expired on March 24, 2008. Therefore, Plaintiff's March 28, 2008 filing was untimely and Defendant's motion for summary judgement is **GRANTED as to Count I.**

### B. Breach of Contracts (Count II & III)

The requisite showings for a breach of contract claim "are the breach and the resultant damages to the party who has the right to complain about the

contract being broken." <u>Budget Rent-A-Car of Atlanta, Inc., v. Webb</u>, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996). "Under general contract principles, the plain meaning of a contract's language governs its interpretation." <u>Slater v. Energy Serv.s Grp. Int'l, Inc.</u>, 634 F.3d 1326, 1330 (11th Cir. 2011). "Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning." <u>Rosen v. Am. Guarantee & Liab. Ins. Co.</u>, 2013 WL 104233, at *1 (11th Cir. Jan. 9, 2013) (quoting <u>First Data POS, Inc. v. Willis</u>, 546 S.E.2d 781, 784 (Ga. 2001)). At issue here is whether Defendant breached the contracts, and if so, whether Plaintiff can recover the damages he seeks.

> ### 1.   Breach

Defendant argues that Plaintiff is unable to show his own performance (i.e., the right to complain), a breach by Defendant, or resulting damages. (Def.'s MSJ Memo., Dkt. [36-1] at 19.) Defendant argues that the contracts were terminated with cause – specifically, for Plaintiff's failure to meet performance targets. (<u>Id.</u> at 19.) Furthermore, Defendant claims, the alleged

12

actions by Defendant listed in Plaintiff's Amended Complaint do not violate any contract terms.  (<u>Id.</u> at 20, n.9.)

Plaintiff responds that Defendant terminated its contracts with Plaintiff for failure to meet performance targets, but many of Defendant's other dealers that did not meet their sales targets were not terminated.  (Pl.'s Resp., Dkt. [45] at 18-19.)  Further, Plaintiff claims, Defendant denied Plaintiff permission to attend training sessions, pursued Plaintiff's customers directly, sold goods directly to Plaintiff's clients, and refused to sell new products to Plaintiff.  (<u>Id.</u> at 20.)  According to Plaintiff, Defendant also redirected employment candidates from Plaintiff's advertising for sales associates for Defendant's own internal sales positions.  (<u>Id.</u>)  And finally, when Plaintiff's sales were struggling, Defendant helped him develop a performance plan, and even though Plaintiff met each item identified for improvement, Defendant still terminated the contracts. (<u>Id.</u>)

Plaintiff argues, based on the conduct described above, that Defendant breached its duty of good faith and fair dealing.  (<u>Id.</u>)  But as Defendant notes, Plaintiff did not allege breach of the implied covenant of good faith and fair dealing in his Amended Complaint.  (Def.'s Reply, Dkt. [53] at 10 n.9.)

Therefore, that theory of recovery is not properly before this Court.  (Id.)  "A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."  Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004).  The Court agrees with Defendant that Plaintiff is limited to the allegations in his Amended Complaint regarding breaches of express contract terms.[4]  (See Amended Complaint, Dkt. [8] ¶¶ 52, 60.)

        a.      Survey Contract (Count II)

        Plaintiff admits that Defendant was allowed to terminate the contract for cause, but claims that "Defendant waived its ability to enforce the Performance Survey Sales Target, the professed reason for termination, by failing to enforce such sales targets with its dealers."  (Id. ¶ 49.)  Regarding termination, the Survey Contract says: "This agreement may be terminated by either party to this Agreement for cause with immediate effect; claims for loss, damages and costs

---

        [4] In any event, Plaintiff cannot prevail on a claim based on the failure to act in good faith and with fair dealing without also showing that an express term of the contract was breached.  See APA Excelsior III, L.P. v. Windley, 329 F. Supp. 2d 1328, 1365 (N.D. Ga. 2004) ("Under Georgia law, the covenant is not an independent contract claim."  Rather, "it is strictly a derivative of a breach of contract claim and cannot be maintained independently.") (internal quotations omitted).  The Court is limited to consideration of Plaintiff's Amended Complaint for allegations regarding Defendant's breach of express contract terms because Plaintiff relies entirely on the good faith and fair dealing theory in his summary judgment response brief and makes no mention of specific contract clauses.

14

(including reasonable attorneys' fees) incurred in conjunction with such claims shall be reserved, in particular, without limitation: . . . if the Performance Target is not being met." (Survey Contract, Dkt. [8-1] at 15.3.5.) Plaintiff does not contend that this contract language is ambiguous. Moreover, in his deposition, Plaintiff admits that the "performance targets were not aspirational" and that the contract could be terminated for failing to meet those targets. (Deposition of Clifford J. DeTemple, Mar. 25, 2009 ("Pl.'s Depo."), Dkt. [36-4] 26:2-24.) Plaintiff also admits that during the course of his contractual relationship with Defendant, he *never* met his performance targets. (Id. 34:13-22.)

Regarding waiver, Clause 18.5 of the Survey Contract says: "Neither Distributor nor Leica Geosystems shall be deemed to have waived any provision of this Agreement, unless such waiver shall be in writing and signed by such party." Similarly, Clause 18.4 requires all contract modifications to be in writing. Again, Plaintiff does not claim that these contract provisions are ambiguous. Plaintiff has not alleged the existence of any writing that waived Defendant's right to terminate under Clause 15.3. Therefore, under the plain terms of the contract and based on the evidence in the record, Defendant did not

15

waive its right to terminate the contract with Plaintiff, and Defendant properly

terminated the contract for cause.

Plaintiff also alleges that Defendant breached Clauses 1.1, 2.3, 2.4, and

Annex 2 of the Survey Contract.  The Clauses at issue read:

> 1.1: Leica Geosystems agrees to sell the Contract
> Products to Distributor pursuant to the terms and
> conditions stipulated in this Agreement.  Distributor shall
> have the right to purchase the Contract Products from
> Leica Geosystems solely for resale to customers in the
> Market Segment located in the Contract Territory.
>
> 2.3: Distributor shall determine its resale prices
> autonomously and independently of the price
> recommendations.
>
> 2.4: Distributor shall not be granted exclusivity rights for
> Contract Products for the Contract Territory, Market
> Segment or customers, unless otherwise agreed upon by
> the parties hereto in a separate "Exclusivity Agreement,"
> which if executed, shall be incorporated by reference into
> this Agreement.[5]

Annex 2 contains the Fiscal Year 2004 Survey Products Discount for Plaintiff

and identifies Plaintiff's performance target for that year as $800,000.

---

[5] Plaintiff has not alleged the existence of any Exclusivity Agreement.

16

To support his allegations that Defendant breached these terms, Plaintiff asserts that Defendant: denied Plaintiff attendance at training opportunities; pursued Plaintiff's leads for clients directly; sold directly to Plaintiff's clients; refused to allow Plaintiff to sell new products; solicited Plaintiff's employees to work for Defendant; redirected Plaintiff's employment candidates for its own sales positions; held Plaintiff to a different standard than other dealerships; and unilaterally altered the terms of the contract.  (Amended Complaint, Dkt. [8] ¶ 51.)  Defendant argues that these allegations are unsubstantiated and do not violate any contract terms.  (Def.'s MSJ Memo., Dkt. [36-1] at 20 n.9.)

The Court agrees with Defendant.  None of the alleged acts by Defendant violate the contract provisions enumerated in the Amended Complaint.  In fact, the allegations are largely irrelevant to the clauses at issue.  Arguably, Plaintiff's allegation that Defendant refused to allow him to sell "new products" could support a claim that Defendant breached Clause 1.1 of the contract.  However, Plaintiff's allegation is devoid of facts and evidence, and the Survey Contract is explicitly limited to "Contract Products" as defined in Annex 1 (e.g., a static list of products).  (Survey Contract, Dkt. [8-1] 0.4.)  Therefore, Plaintiff

17

has failed show any material factual dispute regarding breach of this contract by

Defendant.

>    b.    Service Agreement

In his Amended Complaint,[6] Plaintiff asserts that Defendant provided no

cause for termination of the Service Agreement.  (Dkt. [8] ¶ 57.)  He also

alleges that Defendant breached the contract by "failing to provide written

notice of termination and/or by failing to provide a written request to remedy

any breach by Plaintiff of its obligations under the Service Contract and/or by

failing to provide a period to remedy any breach by Plaintiff of its obligations

under the Service Contract."  (Id. ¶ 55.)  Plaintiff alleges that Defendant

breached Clauses 2.2.1, 2.2.3, and 16.3 of the Service Contract by: denying

Plaintiff's attendance at training opportunities; pursuing Plaintiff's leads for

clients directly; selling directly to Plaintiff's clients in violation of the contract

terms; and holding Plaintiff to a different standard than other dealerships.  (Id. ¶

59.)

---

[6] The Court notes that, like the Survey Contract, Plaintiff has not addressed
Defendant's breach of any express terms of the Service Agreement in his response
brief.  Therefore, the Court is limited to consideration of the allegations in the
Amended Complaint.

The Clauses at issue read:

> 2.2.1: Leica Geosystems hereby authorizes Service Partner to carry out all After-Sales Services for the Contract Products in accordance with Clause 2.2.3 for the duration of this Agreement.

> 2.2.3: Service Partner shall be obliged to carry out After-Sales Services only when it has previously successfully completed the relevant training courses and has a complete understanding and command of the content of the Service Manual as well as the instructions for use at the time of the provision of services. The foregoing shall in particular apply to important safety instructions and warnings.

> 16.3: This Agreement may be terminated for cause at any time with immediate effect . . . .

First, Plaintiff alleges that Defendant did not terminate the Service Agreement for cause as required by Clause 16.3. However, as discussed in Part II.B.1.a., _supra_, termination for Plaintiff's failure to meet performance targets constituted termination for cause. Second, Plaintiff alleges that Defendant did not provide written notice of termination. However, Defendant sent a letter to Plaintiff dated September 29, 2006 stating: "[T]his letter will constitute notice that Leica is terminating its agreement and ceasing to do business with Turning Point effective ninety (90) days from the date of this letter." (Letter from Bob Williams to Plaintiff, Sept. 29, 2006, Dkt. [36-16] at 2.) Plaintiff does not

19

dispute that the letter served as notice of termination of both the Survey Contract and the Service Agreement.  (See Pl.'s Resp. SUF, Dkt. [47] ¶ 34.)[7] Therefore, there is no material factual dispute on these points.

Plaintiff also alleges that Defendant breached Clauses 2.2.1 and 2.2.3 of the Service Agreement.  However, again, none of the alleged acts by Defendant violate these contract provisions.  Plaintiff's vague assertion about Defendant denying him attendance at training opportunities, perhaps his most relevant allegation, is insufficient to create a genuine factual dispute regarding breach of Clause 2.2.3.  See Anderson v. Liberty Lobby, 477 U.S. 242, 257  (1986) (Plaintiff must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist).  Therefore, there is no material factual dispute regarding Defendant's alleged breach of the Service Agreement.

---

[7] Clause 16.7 of the Service Agreement requires that notice of termination be given by registered mail.  Defendant has provided a copy of the FedEx shipping receipt by which the termination letter was sent.  (Dkt. [36-16].)  Plaintiff does not claim that this method of delivery was inadequate under the contract.  The Court also notes that Plaintiff's complaint about not having an opportunity to cure defects in his performance prior to termination is irrelevant, as there is no requirement that Defendant provide such an opportunity under the contract.

In sum, Plaintiff has failed to demonstrate a genuine dispute as to a material fact regarding Defendant's alleged breach of the Survey Contract or the Service Agreement.  Therefore, Defendant's motion for summary judgment is **GRANTED as to Counts II and III.**

> 2.    Damages

Because the Court finds no material factual dispute with regard to breach of the contracts, the Court need not reach the issue of damages.

## Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment [36] is **GRANTED.**

**SO ORDERED**, this  27th  day of February, 2013.

**RICHARD W. STORY**
United States District Judge

21