**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| CLIFF DETEMPLE D/B/A TURNING POINT SYSTEMS GROUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO. 1-09-CV-03272-HTW |
| LEICA GEOSYSTEMS INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT LEICA GEOSYSTEMS INC.'S
<u>RENEWED MOTION FOR SUMMARY JUDGMENT</u>**

John M. Bowler
Georgia Bar No. 071770
**Troutman Sanders LLP**
600 Peachtree Street, NE, Suite 5200
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
john.bowler@troutmansanders.com

COUNSEL FOR DEFENDANT LEICA
GEOSYSTEMS INC.

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION..................................................................................... 1

FACTUAL BACKGROUND ..................................................................... 3

ARGUMENT AND CITATION OF AUTHORITIES............................. 7

    I.     SUMMARY JUDGMENT STANDARD .......................................7

    II.    THE WFDL CLAIM SHOULD BE DISMISSED .............................. 8

        A.    Plaintiff Cannot Establish That He Shared A Community
             Of Interest With Leica............................................................ 8

             1.    The Community of Interest Test is Designed to
                  Weed Out Distributors, Like Plaintiff, Who do not
                  Qualify for Protection Under the WFDL........................ 8

             2.    Leica Did Not Have Plaintiff "Over a Barrel" And
                  The Two Did Not Share A "Continuing Financial
                  Interest." ..................................................................... 11

                  a.    In addition to Leica's Survey Products,
                        Plaintiff Represented the Products of Sokkia..... 12

                  b.    Plaintiff Made No Substantial Sunk
                        Investments ....................................................... 14

        B.    The Remaining Eight Ziegler Factors Demonstrate That
             Plaintiff and Leica Did Not Have A Community of
             Interest ................................................................................. 19

             a.    Length of the relationship................................... 19

             b.    Extent and nature of contractual obligations...... 19

             c.    Percentage of time and revenue devoted to
                  alleged grantor's products or services ................ 21

             d.    Extent and nature of granted territory ................ 22

             e.    Extent of use of commercial symbols ................ 23

# TABLE OF CONTENTS
(continued)

**Page(s)**

f.   Personnel devoted to alleged dealership by
grantee ............................................................... 23

g.   Extent of advertising or promotion
expenditures ....................................................... 24

h.   Extent and nature of any supplementary
services ............................................................... 24

CONCLUSION ...................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................................8

*Baldewein Co. v. Tri-Clover, Inc.*,
606 N.W.2d 145 (Wis. 2000)........................................................................ 17

*Beal v. Paramount Pictures Corp.*,
20 F.3d 454 (11th Cir. 1994) .........................................................................8

*Beloit Beverage Co. v. Winterbrook Corp.*,
900 F. Supp. 1097 (E.D. Wis. 1995).................................................. 15, 19, 23

*Best Group, Inc. v. Dri-Steem Humidifier Co.*,
254 F. Supp. 2d 1073 (E.D. Wis. 2003).................................................. passim

*C.N. Wood Co., Inc. v. Labrie Envt'l Grp.*,
948 F. Supp. 2d 81 (D. Mass. 2013) ...............................................................9

*Cabinetree of Wis., Inc. v. KraftMaid Cabinetry, Inc.*,
914 F. Supp. 296 (E.D. Wis. 1996)................................................. 11, 12, 13, 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................8

*F & C Flooring Distribs., Inc. v. Junckers Hardwood, Inc.*,
No. 08-C-0249, 2009 U.S. Dist. LEXIS 112928 (E.D. Wis. Dec. 4, 2009)...........
............................................................................................................. 16, 18

*Fleet Wholesale Supply Co. v. Remington Arms Co.*,
846 F.2d 1095 (7th Cir. 1988) ........................................................................ 21

*Frieburg Farm Equip., Inc. v. Van Dale, Inc.*,
978 F.2d 395 (7th Cir. 1992) ................................................................9, 15, 17

*Guderjohn v. Loewen-Am., Inc.*,
507 N.W.2d 115 (Wis. Ct. App. 1993) ...................................................... passim

*Heat & Power Prods., Inc. v. Camus Hydronics LTD.*,
    No. 07-C-0639, 2007 U.S. Dist. LEXIS 69332 (E.D. Wis. Sept. 18, 2007) ..........
    ........................................................................................................ 17, 20, 23

*Home Protective Servs., Inc. v. ADT Sec. Servs. Inc.*,
    348 F. Supp. 2d 1010 (E.D. Wis. 2004), *aff'd* 438 F.3d 716 (7th Cir.
    2006) ...................................................................................................... passim

*Kay Beer Distrib., Inc. v. Energy Brands, Inc.*,
    No. 07-C-1068, 2009 U.S. Dist. LEXIS 17733 (E.D. Wis. Feb. 20, 2009),
    *aff'd*, 408 Fed. Appx. 996, 2011 U.S. App. LEXIS 2939 (7th Cir. 2011) ........ 16

*Kealey Pharmacy & Home Care Serv., Inc. v. Walgreen Co.*,
    539 F. Supp. 1357 (W.D. Wis. 1982) ................................................................ 10

*Kenosha Liquor Co. v. Heublein, Inc.*,
    895 F.2d 418 (7th Cir. 1990) ..................................................................... 11, 12

*Kornacki v. Norton Performance Plastics*,
    956 F.2d 129 (7th Cir. 1992), *overruled in part on other grounds by Hill
    v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)......................................... 14, 15, 20

*Kuraki Am. Corp. v. Dynamic Int'l of Wis.*,
    2014 U.S. Dist. LEXIS 85831 (E.D. Wis. June 24, 2014) .......................... 11, 12

*Lees v. Carthage College*,
    2014 U.S. App. LEXIS 11884 (7th Cir. June 24, 2014).......................................8

*Miller-Bradford & Risberg, Inc. v. VT Leeboy, Inc.*,
    No. 06-C-1308, 2007 U.S. Dist. LEXIS 5976 (E.D. Wis. Jan. 26, 2007) ......... 24

*Moore v. Tandy Corp.*,
    819 F.2d 820 (7th Cir. 1987) ..................................................................... 15, 24

*Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*,
    255 F.3d 460 (7th Cir. 2001) ..................................................................... 11, 16

*Sales & Mktg. Assocs. v. Huffy Corp.*,
    57 F.3d 602 (7th Cir. 1995) ............................................................................ 17

*Sevostiyanova v. Cobb County*,
    2014 U.S. App. LEXIS 11023 (11th Cir. June 13, 2014)....................................7

*Super Natural Distribs., Inc. v. MuscleTech Research & Dev.*,
    196 F. Supp. 2d 761 (E.D. Wis. 2002).............................................................. 21

*Thomas v. Georgia State Bd. of Pardons & Paroles*,
    881 F.2d 1032 (11th Cir. 1989) ...........................................................................8

*Ziegler Co. v. Rexnord, Inc.*,
    407 N.W.2d 873 (Wis. 1987).......................................................... 10, 12, 14, 19

### STATUTES

Wis. Stat. § 135.02 ...................................................................................................1

Wis. Stat. § 135.02(1) ........................................................................................... 10

Wis. Stat § 135.02(3)(a) ..........................................................................................9

Wis. Stat. § 893.93(3)(b)...................................................................................... 6, 7

## **INTRODUCTION**

Plaintiff Cliff DeTemple d/b/a Turning Point Systems Group ("Plaintiff") asserts a single remaining claim against Leica Geosystems Inc. ("Leica") under the Wisconsin Fair Dealership Law ("WFDL") (Count I), jumping to the conclusion that his distribution contract was not terminated with the protections provided by the statute.  As Leica explained as part of its previous summary judgment motion [Docket ("Dkt.") 36], Plaintiff has ignored the more fundamental question in a WFDL case:  whether there was a "dealership" at all.[1]  *Id.* at 36, p. 2; Dkt. 36-1 at 7-19; *see* Wis. Stat. § 135.02.  This alternative ground for summary judgment advanced by Leica has never been addressed or ruled on, since the Court granted Leica's motion for summary judgment on the WFDL claim on statute of limitations grounds.  Dkt. 56.

Leica renews this alternative ground for summary judgment now that this matter has been remanded to this Court after the Eleventh Circuit Court of Appeals overturned that portion of the decision granting summary judgment to Leica holding that Plaintiff's WFDL claim is not time barred. (Dkts. 72, 73).  The

---

[1] Leica cites to additional case law published after it filed its initial summary judgment motion [Dkt. 36].  Otherwise, Leica relies on the same arguments and undisputed facts to support its renewed motion on the grounds of lack of a community of interest.  Dkts. 36-1, 36-2, 36-3 (with exhibits), 53, and 54.

undisputed facts relating to the "community of interest" issue demonstrate that the relationship between Leica and Plaintiff fell short of a statutory dealership.

Plaintiff asserts that a "dealership" existed under the Wisconsin Fair Dealership Law ("WFDL") from a *nonexclusive* relationship for survey products that lasted three and a half years.  Six months *before* termination, Plaintiff entered into a contract with a competitor Sokkia Corporation which gave him an immediate and seamless source of substitute survey products in addition to his ongoing representation of Leica HDS laser scanning products.  Six years later, Plaintiff still actively represents Sokkia survey and Leica HDS scanning products.

Plaintiff's relationship with Leica for survey products involved neither continuing financial interest nor interdependence—the key elements necessary to trigger the WFDL.  Notwithstanding Plaintiff's claim that Leica survey products accounted for 80% of his revenue at termination, even if true, he cannot say the loss of the Leica survey products will or would imperil his company.  Plaintiff incurred no illiquid "sunk" costs and devoted no resources exclusively to Leica's survey products.  Further, the existence of survey products competition and Plaintiff's ability to find replacement product from his former employer Sokkia even *before* termination say otherwise.  This simply is not the sort of relationship to which the WFDL was meant to apply.

For these reasons, summary judgment for Leica should be entered, and the WFDL claim should be dismissed with prejudice.

## **FACTUAL BACKGROUND**[2]

Leica produces products for surveying and geographical measurement, and HDS laser scanners used by contractors and engineers to capture dimensional data. Dkt. 36-3 (sometimes referred to as "Bowler Dec.") ¶ 16, Ex. N (Dkt. 36:17 at 21:4-14, 22:1-24:3, 25:3-28:22).  Plaintiff, Cliff DeTemple, has worked in the measuring instruments industry since at least 1988.[3]  Ex. A (Dkt. 36-4 at 17:16-23).  From 1991 to 1993 he was employed by Sokkia Corporation ("Sokkia"), which, like Leica, makes and sells measuring instruments for the surveying and construction industry.  Dkt. 36-4 at 21:4-7.  He then joined measuring systems provider Kara Company, Inc., supplying both Sokkia and Leica products.  Dkt. 36-4 at 21:8-22:17.  In 2002, he founded Turning Point.  *Id.* at 29:22-23.

Plaintiff alleges that he and Leica have entered into a number of agreements

---

[2]  Facts relevant to Leica's arguments are introduced in this background and in the Argument section.

[3]  Depositions cited to in Leica's brief, and documents authenticated during depositions, are lettered as exhibits and attached to the Bowler Dec. (Dkt. 36-3).

over the years.[4]  Ex. A (Dkt. 36-4) at 27:23-28:12, 60:4-21.  The focus of this lawsuit is a Distribution Agreement, which Plaintiff contends governed the parties' relationship for survey, construction, and GPS/GIS products (hereafter "Survey products") from April, 2003 until it was terminated in late 2006. Dkt. 8, at ¶ 8.a.; a copy of the Distribution Agreement is attached as Ex. C to the Bowler Dec. (Dkt. 36-6).  Under that contract, Plaintiff became a distributor of Leica Survey products in some, but not all, Wisconsin counties.  *Id.* at Ex. C (Dkt. 36-6), at Cl. 2.4.

The contract did not prohibit Plaintiff from selling the Survey products of Leica's competitors (*e.g.*, Sokkia).  In addition, Clause 2.4 provided "Distributor shall not be granted exclusivity rights for Contract Products . . . unless otherwise agreed upon by the parties hereto in a separate [executed] 'Exclusivity Agreement' . . . .'"  *Id.*  It is undisputed the parties did not enter into a separate Exclusivity Agreement. Ex. A (Dkt. 36-4) at 72:24–73:9, 111:19-112:24.

In addition, Plaintiff alleges he entered into a separate and distinct Service Agreement which he also sued Leica on.  Under that contract, Leica authorized Plaintiff to carry out certain after-sales service for Survey products bought and sold under the Distribution Agreement.  Ex. D (Dkt. 36-7), at Cl. 2.2.1.

---

[4]  For example, Plaintiff has ongoing, separate HDS contracts for laser scanning products, which are not the subject of this lawsuit. Ex. A (Dkt. 36-4) at 48:15-17 & Ex. B (Dkt. 36-5) at 16:23-25.

On April 14, 2006, Plaintiff signed and entered into a written contract to sell the products of his former employer Sokkia.  Ex. A (Dkt. 36-4), at 103:24-104:23, Ex. B (Dkt. 36-5) 23:1-11.  Since then, he has actively sold Sokkia products, including survey products.  Ex. A (Dkt. 36-4) at 103:24-104:7.

Throughout 2006, Plaintiff missed his Performance Target under the Distribution Agreement.  Ex. A (Dkt. 36-4), at 138:13-17.  Leica identified the problem to Plaintiff as grounds for termination, and in July 2006 implemented steps for him to remedy his performance.  *Id.* at 144:3-146:7.  When Plaintiff, after months, did not correct his performance, Leica, by letter dated September 29, 2006, notified him that it was terminating the Distribution Agreement and Service Agreement, effective 90 days citing his failure to meet his Performance Target for the last three quarters.  *Id.* at 167:17-169:2; Ex. M (Dkt. 36-16).  The Distribution Agreement gave Leica the right, but not the obligation, to repurchase any remaining stock in Plaintiff's inventory.[5]  Ex. C (Dkt. 36-6), at Cl. 16.2.

A year and a half later, on March 28, 2008, Plaintiff sued Leica in the Eastern District of Wisconsin.  Ex. F (Dkt. 36-9).  He alleged the parties' relationship was a "dealership" within the scope of the WFDL and that Leica

---

[5]   In 2007, and again in 2008, the parties discussed a possible repurchase by Leica of the remaining inventory of survey products, and Leica inspected the inventory in the fall of 2008.  An agreement was not reached and Plaintiff has sold the Leica inventory elsewhere. Ex. A (Dkt. 36-4) at 183:4-25, 193:6-194:14.

terminated the relationship without statutory "good cause," a cure period, or equipment repurchase, leaving him with unused inventory. *Id.* at ¶¶ 18-20. Plaintiff amended his complaint, again in Wisconsin, to add claims for alleged breach of the Distribution Agreement and Service Agreement.

On June 24, 2009, the Wisconsin court granted Leica's Motion to Dismiss the WFDL claim, with prejudice, as time-barred by the one-year statute of limitations, Wis. Stat. § 893.93(3)(b).  Ex. G (Dkt. 36-10).  The court further held that the breach of contract claims were required to be filed in Georgia under the forum selection clauses, and dismissed the counts "without prejudice."  On Plaintiff's motion for reconsideration, the Wisconsin court instead dismissed the WFDL claim, like the contract claims, without prejudice, under the forum selection clauses.  Ex. H (Dkt. 36-11).

On November 20, 2009, Plaintiff re-filed his action in the Northern District of Georgia, Dkt. 1, later amending his pleading on January 7, 2010.  Dkt. 8.  In its Summary Judgment Order dated February 27, 2014, this Court granted Leica's motion for summary judgment and entered judgment in Leica's favor on Plaintiff's breach of contract and WFDL claims.  Dkt. 56.  Because the Court held that Plaintiff's WFDL claim was barred by the applicable statute of limitations, the Court did not reach any holding in its Order regarding the other grounds—namely

the lack of a community of interest—raised by Leica in its summary judgment motion and supporting brief [Dkts. 36, p. 2 & 36-1, pp. 7-19] which also warrant judgment in Leica's favor on Plaintiff's WFDL claim.  Dkt. 56.

On March 25, 2014, Plaintiff filed his Notice of Appeal of this Court's Summary Judgment Order to the Eleventh Circuit Court of Appeals, wherein Plaintiff appealed only the portion of the Court's Summary Judgment Order holding that his WFDL claim was barred by the statute of limitations.  Dkt. 67. Plaintiff did not appeal the Court's entry of summary judgment in Leica's favor on Plaintiff's breach of contract claims (Counts II & III).  *Id*.  On August 11, 2014, the Eleventh Circuit Court of Appeals entered its opinion reversing and remanding the Court's Summary Judgment Order as to Plaintiff's WFDL claim, Dkt. 72, which issued as a mandate on September 10, 2014.  Dkt. 73.  Leica now seeks summary judgment as to Plaintiff's WFDL claim for the alternative reason—a lack of a community of interest—raised in its previous summary judgment motion.

## ARGUMENT AND CITATION OF AUTHORITIES

## I.    SUMMARY JUDGMENT STANDARD.

Renewed motions for summary judgment are properly filed after remand where other grounds previously advanced by the moving party have never been addressed. *Sevostiyanova v. Cobb County*, 2014 U.S. App. LEXIS 11023 *1-2

(11th Cir. June 13, 2014) (unpublished) (affirming grant of renewed motion for summary judgment filed after remand); *Lees v. Carthage College*, 2014 U.S. App. LEXIS 11884 *2-5 (7th Cir. June 24, 2014) (unpublished) (affirming grant of renewed motion for summary judgment filed after remand); *Thomas v. Georgia State Bd. of Pardons & Paroles*, 881 F.2d 1032, 1033 (11th Cir. 1989) (district court granted renewed motion for summary judgment after remand).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The mere existence of some factual dispute will not defeat a proper summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  For a dispute to be genuine, evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  While "[e]vidence is viewed in a light most favorable to the nonmoving party . . . , [the Court is not] constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir. 1994) (citations omitted).  The failure to support an essential claim element renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

## II.   THE WFDL CLAIM SHOULD BE DISMISSED.

### A.   Plaintiff Cannot Establish That He Shared A Community Of Interest With Leica.

#### 1.   The Community of Interest Test is Designed to Weed Out Distributors, Like Plaintiff, Who do not Qualify for Protection Under the WFDL.

The WFDL does not apply to every business relationship, but instead "reaches only to those business relationships properly classified as 'dealerships.'" *Frieburg Farm Equip., Inc. v. Van Dale, Inc.,* 978 F.2d 395, 398 (7th Cir. 1992). The entities to be protected and bearing the "typical" dealer characteristics include "a fast-food franchise or gasoline service station." *Home Protective Servs., Inc. v. ADT Sec. Servs. Inc.*, 348 F. Supp. 2d 1010, 1013 (E.D. Wis. 2004), *aff'd* 438 F.3d 716 (7th Cir. 2006) (citation omitted); *see also C.N. Wood Co., Inc. v. Labrie Envt'l Grp.*, 948 F. Supp. 2d 81, 85 (D. Mass. 2013) (The WFDL "does not use the specific term 'franchise,' but it defines the term "dealership" in a similar way…"). The Wisconsin Legislature did *not* intend to protect entities like Plaintiff, who are involved in a "typical 'vendor-vendee' relationship." *Id.* (citation omitted).

A dealership requires:  (i) a contract or agreement between Plaintiff and Leica; (ii) wherein Plaintiff was granted the right to sell or distribute Leica's products or to use Leica's name and marks; and (iii) a "community of interest" between Plaintiff and Leica in the sale and distribution of Leica's products.  Wis.

Stat § 135.02(3)(a); *Home Protective Servs.,* 348 F. Supp. 2d at 1013.  The first two elements, while not conceded by Leica, are not the subject of this motion. Rather, Leica is entitled to summary judgment because Plaintiff cannot, as a matter of law, establish a community of interest with Leica.  *Kealey Pharmacy & Home Care Serv., Inc. v. Walgreen Co.*, 539 F. Supp. 1357, 1370 (W.D. Wis. 1982).

The WFDL defines a community of interest as "a continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods and services."  Wis. Stat. § 135.02(1). The Wisconsin Supreme Court held in *Ziegler Co. v. Rexnord, Inc.*, 407 N.W.2d 873, 877 (Wis. 1987), that a community of interest only exists between a grantor and grantee where there is "some significant economic relationship" between the two.  Such a relationship may be found where two "guideposts" are present:  (i) a "*continuing financial interest* in their relationship;" and (ii) "*interdependence*" as shown by "the degree to which the dealer and grantor cooperate, coordinate their activities and share common goals in their business relationship."  *Id.* at 878-79 (emphasis added).  *Ziegler* articulated ten factors (not elements) to guide courts in determining if a continuing financial interest and interdependence are present.[6]  *Id.*

---

[6]   The *Ziegler* factors include:  the percentage of profits derived from the alleged grantor's products; the amount the alleged dealer spent on advertising the alleged grantor's products; the duration of the parties' relationship; the extent and nature of

at 879-80; *Cabinetree of Wis., Inc. v. KraftMaid Cabinetry, Inc.*, 914 F. Supp. 296, 300 (E.D. Wis. 1996). If Plaintiff fails to establish either a continuing financial interest or interdependence, a community of interest is lacking.

The community of interest requirement identifies situations in which the manufacturer has the dealer "over a barrel." *Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*, 255 F.3d 460, 464-65 (7th Cir. 2001); *Kuraki Am. Corp. v. Dynamic Int'l of Wis.*, 2014 U.S. Dist. LEXIS 85831 at *9-10 (E.D. Wis. June 24, 2014). To demonstrate that the grantor had the would-be dealer "over a barrel," the alleged dealer must show the sort of brand-specific investment that would render it vulnerable to opportunistic behavior by the grantor.[7] Here, the parties

---

the obligations imposed on the parties in the contract or agreement between them; the percentage of time or revenue the alleged dealer devotes to the alleged grantor's products or services; the extent and nature of the alleged grantor's grant of territory to the alleged dealer; the extent and nature of the alleged grantor's proprietary marks (such as trademarks or logs); the extent and nature of the alleged dealer's financial investment in inventory, facilities, and good will of the alleged dealership; the personnel which the alleged dealer devotes to the alleged dealership; and the extent and nature of any supplementary services provided by the alleged dealer to consumers of the alleged grantor's products or services.

[7]  The Seventh Circuit has distilled the community of interest test and its financial interest and interdependence components as having the "central function" of "preventing suppliers from behaving opportunistically once franchisees or other dealers have sunk substantial resources into tailoring their business around, and promoting, a brand." *Kenosha Liquor Co. v. Heublein, Inc.*, 895 F.2d 418, 419 (7th Cir. 1990) (citations omitted).

agree on the material facts but disagree only as to whether, based on such facts, they shared a community of interest.  Because the material facts are undisputed, the Court may determine on summary judgment if a community of interest exists.[8]

### 2.   Leica Did Not Have Plaintiff "Over a Barrel" And The Two Did Not Share A "Continuing Financial Interest."

Under the WFDL, "continuing financial interest" means more than that each party can make money if their relationship continues.  The Seventh Circuit has distilled the *Ziegler* factors to two circumstances in determining if a continuing financial interest is present such the putative dealer is "over a barrel": (1) the percentage of profits derived from the alleged dealership; and (2) sizeable sunk investments by the alleged dealer in the dealership. *Kenosha Liquor,* 895 F.2d at 419; *Home Protective Servs.*, 438 F.3d at 720; *Cabinetree*, 914 F. Supp. at 300; *Kuraki Am. Corp.*, 2014 U.S. Dist. LEXIS 85831 at *5.

### a.   In addition to Leica's Survey Products, Plaintiff Represented the Products of Sokkia.

That Plaintiff may have derived much of his profits from his sale of survey products purchased from Leica is not dispositive.  *See Cabinetree*, 914 F. Supp. at 300.  This stands to reason because Plaintiff was in a position to transition immediately and successfully to carrying alternative products, such as Sokkia's

---

[8]  *E.g.*, *Home Protective Servs.*, 348 F. Supp.2d at 1015 n.9.

survey products, and thus was not "over a barrel."  Ex. A (Dkt. 36-4), at 32:18-

33:13.  Plaintiff began carrying Sokkia products in mid-2006, even *before* the

termination by Leica, and he actively sells Sokkia survey products, which

constitute at least 25 to 30 percent of his business.  *Id.* at 54:17-55:4, 55:19-22.[9]

Plaintiff also continues to sell Leica's HDS scanning products.  *Id.* at 48:15-17.

Though the proportion of business attributable to Leica's survey product line

is relevant, a "large proportion" of revenues or potential lost future profits on

termination will *not*, in and of itself, cause the WFDL to apply.  *See Cabinetree*,

914 F. Supp. at 300.  Courts "have declined to find a community of interest even

where an alleged grantor's products or services accounted for a significant

percentage of an alleged dealer's revenue." *Home Protective Servs.,* 348 F.

Supp.2d at 1016 (citing cases).

The situation here is analogous to that in *Home Protective Services.*  There,

the Court declined to find a community of interest despite the fact that the plaintiff

depended upon the defendant ***for 95% of its revenue***, since the plaintiff could

easily acquire a different stream of revenue by taking on a competitor's product.

348 F. Supp. 2d at 1015-16.  In granting summary judgment, the district court held

that, as a matter of law, the parties did not create a dealership, though the putative

_____

[9] Representative samples of Plaintiff's 2006 and early 2007 Sokkia purchases are attached as Ex. T to the Bowler Decl. (Dkt. 36-23).

dealer: 1) derived 95 percent of its revenue from and devoted 95 percent of its time to the arrangement with the putative grantor, and 2) incurred $63,000 in one-time losses while searching for a new partner and more than $14,000 in recurring monthly losses once it began a less profitable relationship with the replacement grantor. *Id.* at 1017.  The Seventh Circuit affirmed, concluding that a community of interest did not exist when the would-be dealer was able to find a replacement grantor.  438 F.3d at 719-20.[10]

Plaintiff's situation here is in fact far less compelling than the plaintiff's in *Home Protective Services*, since Plaintiff could and did turn his attention to the well-known Sokkia brand already in his product line since June 2006, over three months *before* Leica sent the notice of termination.  *See also Kornacki v. Norton Performance Plastics*, 956 F.2d 129, 133 (7th Cir. 1992) (granting summary judgment for defendant even though 75 to 85 percent of plaintiff's income was from sales of defendant's products), *overruled in part on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n. 1 (7th Cir. 2013).

Put simply, Plaintiff has nothing to favorably distinguish himself from the plaintiff in *Home Protective Services*.  *See Best Group, Inc. v. Dri-Steem Humidifier Co.*, 254 F. Supp. 2d 1073 (E.D. Wis. 2003) (no community of interest

---

[10]  In *ADT*, the Seventh Circuit not only followed *Central Corp.* and the two well-established guideposts, it also recited the 10-facet *Ziegler* test. 438 F.3d at 719-20.

though plaintiff's agreement lasted 17 years and 70% of its business was from

defendant's products).  If there was no community of interest in those cases, there

certainly is none here.

### b.   Plaintiff Made No Substantial Sunk Investments.

The lack of any substantial investment tied to Leica further dooms

Plaintiff's dealership claim.  The investment must be an "ill-liquid" financial

investment, that is, an investment not readily usable for other purposes in the event

of termination.  *Frieburg,* 978 F.2d at 399.  An example is money spent modifying

a retail store to the grantor's specifications such that the store could not be used for

other purposes without costly changes.  *Moore v. Tandy Corp.*, 819 F.2d 820, 822

(7th Cir. 1987).  Further, the investment must be financial.  It is not enough to

spend time and effort developing goodwill.  *Kornacki*, 956 F.2d at 133.  Finally,

Plaintiff must prove that he had not already recovered his investment over his four

and a half years selling Leica Survey products.  *See Beloit Beverage Co. v.*

*Winterbrook Corp.*, 900 F. Supp. 1097, 1106-08 (E.D. Wis. 1995).

Here, Plaintiff seeks damages based on (1) the value of his Leica Survey

product inventory at termination, and (2) lost profits.  As to the first type, even a

substantial investment in inventory does not imply a community of interest when

the inventory that remains at termination can be sold.  *See Guderjohn v. Loewen-*

*Am., Inc.*, 507 N.W.2d 115, 119-20 (Wis. Ct. App. 1993).  Plaintiff could, and did, sell his Leica Survey product inventory after termination.  Ex. B (Dkt. 36-5), at 119:5-18.

As to Plaintiff's second category of damages, lost profits are not enough to establish a "continuing financial interest." *Best Group,* 254 F. Supp. 2d at 1080 (citing *Sales & Mktg. Assocs. v. Huffy Corp.*, 57 F.3d 602, 607 (7th Cir. 1995)). That parties wish to make money from commercial relationships is common to vendor/vendee relationships.  *Cabinetree*, 914 F. Supp. at 301-02 (citing *Ziegler*, 407 N.W.2d at 880).  Plaintiff's stake in the contract "is primarily in future profits, and that is not enough to distinguish it from a typical vendee."  *Guderjohn*, 507 N.W.2d at 121.

Plaintiff has not demonstrated any investment in fixed assets or sunk costs. *See*, *e.g.*, *Kay Beer Distrib., Inc. v. Energy Brands, Inc.*, No. 07-C-1068, 2009 U.S. Dist. LEXIS 17733, at *32-33 (E.D. Wis. Feb. 20, 2009), *aff'd*, 408 Fed. Appx. 996, 2011 U.S. App. LEXIS 2939 (7th Cir. 2011) (affirming grant of summary judgment finding no community of interest).[11]  To find a "community of interest,"

---

[11]  *See also F & C Flooring Distribs., Inc. v. Junckers Hardwood, Inc.*, No. 08-C-0249, 2009 U.S. Dist. LEXIS 112928, at *7-8 (E.D. Wis. Dec. 4, 2009) (summary judgment for defendant where one could not "conclude that defendant's product was such a cornerstone of plaintiff's business that the loss of the product put plaintiff's financial health in jeopardy."); *Praefke*, 255 F.3d at 465 (no significant

not just any investment will suffice.  *See Frieburg,* 978 F.2d at 399; *Best Group*,

254 F. Supp. 2d at 1079-80.  The investment must be a "sunk" cost, specialized to

a particular supplier's goods that cannot be recovered.  *See e.g., Frieburg*, 978 F.2d

at 399*; Baldewein Co. v. Tri-Clover, Inc.*, 606 N.W.2d 145, 151-52 (Wis. 2000).

Investments whose value is recovered through increased sales during the

relationship or can be recovered after termination are not "sunk" costs.  *See, e.g.*,

*Guderjohn*, 507 N.W.2d at 120.  To be "sunk," costs must be "tied solely" or

"devoted exclusively" to the alleged grantor's products. *Sales & Mktg. Assocs.*, 57

F.3d at 606.  None of the costs identified by Plaintiff to date constitute "sunk"

costs for purposes of the WFDL:

Facilities.  Plaintiff has referred to a commercial building, including

warehouse, offices and a show room, that he bought in 2004 for less than

$250,000.  Dkt. 45 at 11.  That building assisted Plaintiff in generating sales not

only of Leica's survey products, but also of Leica HDS laser scanning products

that he continues to represent, as well as Sokkia survey products.  Ex. A (Dkt. 36-

4), at 34:11-35:3.  The purpose of those facilities was not exclusively for Leica

brand-specific investments where party "can switch, so far as appears painlessly, to
other lines."); *Heat & Power Prods., Inc. v. Camus Hydronics LTD.*, No. 07-C-
0639, 2007 U.S. Dist. LEXIS 69332, at *14-15 (E.D. Wis. Sept. 18, 2007) ("there
is no indication that HPP's good name will somehow be tarnished or less respected
due to the fact that it promoted a product line that it will no longer carry" and its
"efforts were compensated in the form of some $1.1 million in revenues").

survey products and was achieved before termination; Plaintiff has recouped his

investment in ongoing product sales.  *See, e.g., F & C Flooring*, 2009 U.S. Dist.

LEXIS 112928, at *9.

Inventory.  Plaintiff suggests his inventory of Leica survey products

evidences a dealership relationship.  However, nothing from such inventory

suggests Plaintiff's terminated contract with Leica was more special than a typical

vendor-vendee relationship.  Leica did not prevent him from selling that inventory

after termination. Ex. B (Dkt. 36-5), at 119:5-18. *See Guderjohn*, 507 N.W.2d at

119-20 (even substantial investment in inventory does not imply community of

interest when remaining inventory can be sold after termination).

Use of Leica's name or mark.  At most, Plaintiff used Leica's name in

connection with the sale of Leica's goods.  Dkt. 45 at 16; Ex. A (Dkt. 36-4), at 22-

:2-6.  How is this different than any other ordinary vendor-vendee relationship?

Even accepting Plaintiff's claim that he marketed Leica's survey products (and

HDS laser scanning products) at trade shows and used Leica's logo on his website,

Plaintiff has not demonstrated that he depended on his affiliation with Leica survey

products for his image.  *See Home Protective Servs.*, 348 F. Supp. 2d at 1017 (no

dealership though plaintiff invested $32,000 annually in advertising bearing

defendant's logo; and upon termination, plaintiff was left with $10,000 in advertising materials).

Percentage of time devoted to Leica Survey Products.  Although Plaintiff contends that 75% of his small staff's overall time was devoted to Leica survey products, he has no documentary support.  Dkt. 45 at 14-17.  Plaintiff admits none of his personnel ever were dedicated exclusively to the Leica survey product line. *Id.* at 14-15.  Rather, each supported in some manner all goods carried by Plaintiff.

**B.      The Remaining Eight *Ziegler* Factors Demonstrate That Plaintiff and Leica Did Not Have A Community of Interest.**

Considering the other eight *Ziegler* factors to determine if there is sufficient "interdependence" demonstrates no basis for invoking the protections of the WFDL because no community of interest existed.

a.      Length of the relationship.

This *Ziegler* factor "is a significant factor to be considered." *Central*, 681 N.W.2d at 189.  While Plaintiff has been in the survey products industry for 24 years (since 1988), and continues in the industry today, he carried Leica's Survey products for over 3 and a half years.  Courts have found a community of interest lacking when presented with much lengthier relationships.  *See*, *e.g.*, *Best Group*, 254 F. Supp. 2d at 1080 (seventeen-year relationship does not create a community of interests); *Beloit Beverage*, 900 F. Supp. at 1104 (no community of interest

notwithstanding "significant" *thirteen year* relationship); *Guderjohn*, 507 N.W.2d at 120 (four year relationship not enough to cement interdependence).

        b.    <u>Extent and nature of contractual obligations.</u>

      The obligations in the Distribution Agreement were modest.  They were fewer and less significant (*e.g.*, allowing for termination on notice without cause), than those imposed by the WFDL. Ex. C (Dkt. 36-6), at Cl. 15.3, 15.3.5.  This indicates the parties viewed their relationship as more casual than that necessary to show a dealership.  *See*, *e.g.*, *Heat & Power*, 2007 U.S. Dist. LEXIS 69332, at *21 ("the parties' own agreement suggests that they viewed the relationship more casually than HPP now claims.").

      Further, the Distribution Agreement language contradicts any argument of continuing financial interest and interdependence by providing that it does not create an agency, franchise, or otherwise form "a statutory or contractual entity" of any kind, and that Plaintiff "is neither entitled to act on behalf of or for the account of Leica Geosystems or to enter into commitments on Leica Geosystems' behalf." Ex. C (Dkt. 36-6), at Cl. 2.1; *see, e.g., Kornacki*, 956 F.2d at 132-33 (sales agent with no power to bind grantor was not a dealer under WFDL though much of his revenue came from selling grantor's products).

Plaintiff's economic function further was the functional equivalent of a vendee or sales representative.  He solicited the customers he chose, and he entered into contracts directly with those (his) customers.  He was entrusted with no decisions by Leica.  Further, he acknowledges that Leica did not dictate the price at which he sold Leica's products to a customer.  Ex. A (Dkt. 36-4), at 122:24-123:2; Ex. C (Dkt. 36-6), at Cl. 2.3.  Nor does the fact that Leica sold products directly to customers in the same market create some alleged price "ceiling" on the Leica products sold by Plaintiff.  Rather, Plaintiff merely competed in price with Leica as a retailer of similar Leica products in the same market.  Plaintiff also admits understanding the Distribution Agreement to state he was independent, did not work for Leica, was not an agency or franchisee of Leica, and Leica did not control Plaintiff's business or dictate Plaintiff's prices.  Ex. B (Dkt. 36-5), at 84:2-85:7; Ex. C (Dkt. 36-6), at Cl. 2.1.  Plaintiff further acknowledges the contract allowed for termination for cause with immediate effect, including for failure to meet his Performance Target.  Ex. B (Dkt. 36-5), at 92:1-20; Ex. C (Dkt. 36-5), at Cl. 15.3, 15.3.5.  The mere existence of a performance target certainly did not create a dealership.  *See*, *e.g.*, *Super Natural Distribs., Inc. v. MuscleTech Research & Dev.*, 196 F. Supp. 2d 761, 779 (E.D. Wis. 2002) (summary judgment of no dealership in spite of sales targets); *Fleet Wholesale Supply Co. v. Remington Arms*

*Co.*, 846 F.2d 1095, 1098 (7th Cir. 1988) (distributor with annual sales targets unlikely to prevail in showing itself to be a dealership).

        c.      Percentage of time and revenue devoted to alleged grantor's products or services.

Plaintiff is unable to state how much time and revenue he spent on Leica's products, weighing against finding the existence of a dealership.  He cannot break down the revenues attributed to Leica survey products, as opposed to Leica HDS and Sokkia products.  Ex. B (Dkt. 36-5), at 69:20-25.  Further, he admits that he does not know how product revenues were allocated in summary documents that his former employee created for this lawsuit.  *Id.* at 71:8-17.

Even if Plaintiff was able to show a high percentage of his time or revenue to have been derived from Leica survey products, such a showing would not be dispositive.  *See supra* Section II. A.2.a, pp. 13-14 (citing *Home Protective Services, Kornacki,* and *Best Group*).  Plaintiff easily found another survey product distributor, Sokkia, to work with before and after the relationship with Leica ended in 2006.  *See Home Protective Servs*, 438 F.3d at 720 (where plaintiff "could (and did) find another grantor to work with, it was not 'over the barrel.'").  Plaintiff cannot show any lost investment in the relationship, and any monies he spent were recouped.  *See id.* ("the funds HPS invested in marketing the ADT name over the years may well have been recouped via increased sales during that time").

d.    Extent and nature of granted territory

The extent and nature of Leica's grant of territory to Plaintiff also demonstrates no dealership existed.  Plaintiff had *no* exclusive territory, but was granted instead a nonexclusive territory in which Leica itself could sell survey and construction products directly.  Ex. A (Dkt. 36-4), at 72:24–73:23.  Plaintiff's exclusivity was one-way: no other outside distributor of Leica survey products could sell in his territory, but he did not have to surrender the right to sell *any* products, even those competing with Leica survey products.  Moreover, portions of Wisconsin hardly constitute a wide geographic area.  Regardless, even an exclusive territory, in and of itself, is not enough to allow a finding of a dealership.  *Beloit Beverage*, 900 F. Supp. at 1109.  Plaintiff was also free to, and did, distribute survey products of other distributors such as Sokkia.  Ex. B (Dkt. 36-4), at 40:13-23; Ex. T (Dkt. 36-23). *See*, *e.g.*, *Heat & Power*, 2007 U.S. Dist. LEXIS 69332, at *18-19 ("the exclusivity provision limited only . . . the alleged grantor" and exclusivity shows a dealership "only when the dealer sacrifices his ability to sell other competing products . . . to sell the grantor's.").

e.    Extent of use of commercial symbols.

Leica granted Plaintiff only a limited right to use specific Leica commercial symbols and then only with Leica's pre-approval.  Ex. A (Dkt. 36-4), at 220:2-6.

Plaintiff, for example, unlike a local operator of a national fast-food chain, could not hold himself out as Leica or cause any confusion in the marketplace between himself and Leica.  Ex. B (Dkt. 36-5), at 90:3-12; Ex. C (Dkt. 36-6), at 13.1-13.6.

      f.      <u>Personnel devoted to alleged dealership by grantee.</u>

Plaintiff admits the small number of personnel he employed, let alone devoted specifically and exclusively to Leica's products.  Ex. A (Dkt. 36-4), at 50:9-25.  Today, his employees continue to work on sales of Leica HDS laser scanning products, and survey products of Sokkia.  *Id.* at 90:19-22.

      g.      <u>Extent of advertising or promotion expenditures.</u>

Plaintiff was not required to sink significant investments in the advertising and promotion of Leica survey products.  His alleged actual expenditures were extremely limited and did not create a community of interest, since they were either: (1) not specific to Leica; (2) not required by Leica; or (3) ultimately recouped.  General promotion by an alleged dealer not specific to the alleged grantor does not count toward this facet of the analysis.  *Moore*, 819 F.2d at 823; *Miller-Bradford & Risberg, Inc. v. VT Leeboy, Inc.*, No. 06-C-1308, 2007 U.S. Dist. LEXIS 5976, at *24 (E.D. Wis. Jan. 26, 2007).  Plaintiff's investment in brochures, flyers and promotional items were all incurred to increase sales and, presumably, were recouped. *See Home Protective Servs.*, 438 F.3d at 720.

h.    <u>Extent and nature of any supplementary services.</u>

Any supplementary services provided by Plaintiff to users of Leica's

products or services were minimal and insufficient to create a dealership.  Plaintiff

acknowledges he was not a full service center for Leica's products and that the

revenue he derived from such servicing and repair was small.  Ex. A (Dkt. 36-4), at

117:18-118:1.  While Plaintiff provided limited repair services, he admits he "did

not have the capability to handle all service and repairs of Survey Products

internally[.]" Dkt. 45 at 17.  That Leica entered into an agreement for Plaintiff to

provide repair service for customers separate and distinct from the offer and sale of

survey products reinforces the conclusion that Plaintiff and Leica were in a

vendor/vendee relationship rather than a dealership relationship.  Because Plaintiff

cannot demonstrate that he and Leica shared a community of interest, Leica is

entitled to summary judgment on the WFDL claim.

## CONCLUSION

For these reasons, summary judgment is warranted against Plaintiff on his

remaining WFDL claim (Count I) and this suit should be dismissed with prejudice.

Dated:  September 11, 2014.

By:   <u>/s/ John M. Bowler</u>
          John M. Bowler
          Georgia Bar No. 071770
          COUNSEL FOR DEFENDANT

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing memorandum, including footnotes, has been

prepared in Times New Roman 14 font in compliance with Local Rule 5.1.

By:   /s/ John M. Bowler

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| CLIFF DETEMPLE D/B/A TURNING POINT SYSTEMS GROUP, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 1-09-CV-03272-HTW |
| LEICA GEOSYSTEMS INC., | ) ) | |
| Defendant. | ) ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2014, the undersigned caused a true and correct copy of the MEMORANDUM IN SUPPORT OF DEFENDANT LEICA GEOSYSTEMS INC.'S RENEWED MOTION FOR SUMMARY JUDGMENT to be served upon counsel of record via the Court's CM/ECF filing system.

By:   /s/ John M. Bowler
John M. Bowler
Georgia Bar No. 071770
**Troutman Sanders LLP**
600 Peachtree Street, NE, Suite 5200
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
**john.bowler@troutmansanders.com**

Active 22782874