# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| CLIFF DETEMPLE D/B/A TURNING POINT SYSTEMS GROUP, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO. 1-09-CV-03272-RTS |
| LEICA GEOSYSTEMS INC | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## BRIEF IN SUPPORT OF DEFENDANT LEICA GEOSYSTEMS, INC.'S DAUBERT MOTION/MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS TRACY L. COENEN

John M. Bowler
Georgia Bar No. 071770
**Troutman Sanders LLP**
600 Peachtree Street, NE, Suite 5200
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
john.bowler@troutmansanders.com

COUNSEL FOR DEFENDANT LEICA
GEOSYSTEMS INC.

**<u>INTRODUCTION</u>**

Plaintiff seeks to recover various categories of damages allegedly caused by Leica's termination of a contract for the sale of Leica's surveying products. To prove his damages, Plaintiff intends to offer Tracy Coenen CPA, ("Coenen"), as an expert witness on damages. But Coenen's approach to calculating damages is nothing more than guesswork and flawed arithmetic. Her methods are wholly unreliable and would not assist a jury in evaluating damages.

The Eleventh Circuit has long held that "expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004). The risk of confusing, prejudicing, or misleading the jury through Coenen's flawed and conjectural testimony is particularly significant in this case. Consequently, the Court should exclude Coenen from offering any opinions on the issue of damages at trial.[1] Leica further requests that the Court rule on this issue in advance of trial.

---

[1] Leica submits that this issue can be fully resolved on the briefs and Coenen's report and deposition testimony without a hearing, *see Broussard v. Maples*, 535 F. App' x. 825, 827-828 (11th Cir. 2013) ("the district court was under no obligation to hold a *Daubert* hearing or otherwise provide the plaintiffs with an additional opportunity to lay a proper foundation for the admissibility of [their expert's] report, at least not under the particular circumstances of this case.") (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1113 (11th

If presented, Coenen's testimony will prejudice the jury even if they are later instructed to disregard it.  Further, a ruling on Coenen's testimony, could significantly affect the parties' trial strategies and reduce the time and cost of trial.

## ARGUMENT AND CITATION OF AUTHORITIES

Coenen prepared an expert report dated February 28, 2012 setting forth her opinions on the damages claimed by Plaintiff in this action.  A copy of Coenen's Report is attached hereto as **Exhibit 1** (the "Coenen Report").  Coenen's report is a terse five page document, with almost no analysis.  The report includes three attachments (which were *not* prepared by Coenen, but by the Plaintiff).  *See* Coenen Dep. 27:2-6.  In her report, Coenen lists three categories of damages that she suggests Plaintiff is entitled to recover: (1) inventory loss; (2) lost profits; and (3) value of business.

Leica took Coenen's deposition soon after she issued her report.  A copy of Coenen's complete deposition transcript is attached hereto as **Exhibit 2**.  ("Coenen Dep.").  Rather than clarify her report, however, Coenen's deposition testimony confirms that her opinions are based on flawed data and mere *ipse dixit* of Coenen, Plaintiff, and his counsel.  Considering Coenen's report and her testimony, it is clear that Coenen's "opinion" on inventory loss is nothing more than simple

Cir. 2005)); but Leica is ready to present its position at a pre-trial *Daubert* hearing if it would help educate the Court and provide for further explanation of the issues.

mathematical calculation, and a severely flawed one at that.  In addition, Coenen's

opinion on lost profits is wholly conjectural, contains no real analysis at all, and

fails to reach any conclusion on the amount of profits Plaintiff purportedly lost;

further, Coenen stretches lost profits far into the future (15, 20, and 25 years)

merely because trial counsel asked her to use these time periods.  Finally, Coenen's

opinion on "value of business" is simply non-existent.  For these reasons, Leica

respectfully asks that the Court exclude Coenen from offering trial testimony.

## I.    LEGAL STANDARD GOVERNING THE ADMISSION OF EXPERT TESTIMONY.

The admission of expert testimony is governed by Rule 702 of the Federal

Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of re-liable principles and methods; and
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The trial court, as the gatekeeper, must determine that the testimony is

"sufficiently tied to the facts of the case that it will aid the jury in resolving a

factual dispute." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591 (1993)

(quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)).  The trial

court must also "make certain that an expert . . . employs in the courtroom the

same level of intellectual rigor that characterizes the practice of an expert in the

relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The

Eleventh Circuit has synthesized the existing rules into a three-part inquiry:

> Expert testimony may be admitted into evidence if: (1) the expert is
> qualified to testify competently regarding the matter he intends to
> address; (2) the methodology by which the expert reaches his
> conclusions is sufficiently reliable as determined by the sort of inquiry
> man-dated in *Daubert*; and (3) the testimony assists the trier of fact,
> through the application of scientific, technical, or specialized
> expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)

(footnote and citations omitted).

　　With respect to the reliability of expert testimony, relevant factors include

"(1) whether the expert's theory can be and has been tested; (2) whether the theory

has been subjected to peer review and publication; (3) the known or potential rate

of error of the particular scientific technique; and (4) whether the technique is

generally accepted in the scientific community." *U.S. v. Frazier*, 387 F.3d 1244,

1262 (11th Cir. 2004).  "These factors are illustrative, not exhaustive; not all of

4

them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." *Id.*

Under established Eleventh Circuit law, district courts enjoy "considerable leeway" when deciding whether to exclude expert testimony, and will not be reversed unless "the ruling is manifestly erroneous." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1027 (11th Cir. 2014) (citing *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc)). This Circuit has noted the substantial amount of deference given to district courts in their rulings on the exclusion of experts under *Daubert*, noting "the heavy thumb – really a thumb and a finger or two – that is put on the district court's side of the scale" in reviewing such decisions. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1344 (11th Cir. 2010) (concluding it was not an abuse of discretion to exclude expert's opinion).

## II.   THE COURT SHOULD EXCLUDE COENEN'S TESTIMONY REGARDING LOSS OF BUSINESS VALUE.

Coenen includes a "Value of Business" section in her report, but fails to offer any opinion about the value of Plaintiff's business and "reserves" the right to do so and to "supplement" her opinions. Coenen Rep. 5. Thereafter, Coenen testified at deposition:

> I do intend to offer some opinion about the value of the business based on discovery that may be received. I will not do what is typically referred to as a business appraisal or business valuation, but I

> do intend to set forth some opinions regarding the value of the
> business.

Coenen Dep. 99:4-9.

As of today, nearly three years after Coenen's deposition, however, she has not supplemented her report or offered any opinion on the value of Plaintiff's business. Moreover, in the parties' proposed Pretrial Order filed today (Docket# 83), Plaintiff fails to identify lost business value as a category of damages sought. *Id.* at 39-40. Accordingly, it would be wholly improper for Coenen to testify on the topic at trial.

Plaintiff has failed to satisfy the requirement set forth in Rule 26(a)(2)(B)(i).[2] Coenen's report fails to offer any basis or reasons for opinions on business value. Nor has Plaintiff supplemented Coenen's report before the parties submitted the Pretrial Order to the Court. Coenen also should be excluded from testifying on the value of Plaintiff's business because she is not qualified to offer such testimony.[3] *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548,

---

[2] A testifying expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 26(e)(2) goes on to state "[a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2)(emphasis added).

[3] Coenen stated unequivocally in her deposition: "I do not currently do business valuations." Coenen Dep. 97:11; 14:16-18 ("Q: What percentage of your time at Sequence, Inc., is spent on business valuation? A: Zero"). Coenen went on to

562 (11th Cir. 1998) (noting the *Daubert* inquiry of whether the "expert is qualified to testify competently regarding the matter he intends to address"). Coenen is simply not qualified to testify competently about the value of Plaintiff's business.

## III.   THE COURT SHOULD EXCLUDE COENEN'S TESTIMONY REGARDING INVENTORY LOSS.

Plaintiff's claimed "inventory loss" is based on the theory that Plaintiff purchased Leica surveying products while under contract with Leica, but when Leica terminated the contract, Plaintiff had remaining inventory that he sold at a loss.  Coenen offers her expert opinion that Plaintiff suffered $167,197 in inventory loss, but her opinion is nothing more than a fundamentally flawed mathematical calculation, using limited, untested financial data from the Plaintiff.

The valuation of such inventory loss should be, at base, a simple mathematical calculation:

> Initial Cost of Inventory
> (Proceeds from Inventory Sold)
> (Value of Remaining Inventory)
> Inventory Loss

---

state that, if she recalled correctly, she performed a business valuation in 2000 or 2001, and that valuation was not in the context of litigation.  *Id.* 14:23-15:4.

In her report, Coenen seems to perform a similar calculation:

| | |
|---|---|
| Original Cost of Products | $211,641 |
| Sales of Products | ($44,444) |
| Surveying Inventory Loss | $167,197 |

Coenen Rep. 2.  But even minimal scrutiny shows Coenen's calculation is faulty.

First, a huge portion of the purported inventory loss (nearly $90,000) is based on inventory that has never been accounted for.  To address Coenen's error, it is helpful to discuss the three exhibits attached to Coenen's report.  Exhibit A represents Plaintiff's Leica survey product inventory on hand after contract termination (dated December 15, 2008), totaling $211,641 at wholesale cost. Exhibit B represents Plaintiff's Leica survey product inventory on hand just before Coenen issued her report (February 24, 2012), totaling $24,872 at wholesale cost. According to Coenen, "[t]he difference between Exhibit A and Exhibit B represents items that were sold at a substantial discount from the price [Plaintiff] paid for them.  Coenen Rep. 2.  The difference between Exhibit A ($211,641) and Exhibit B ($24,872) is **$186,769**.

Coenen then stated in her report that Exhibit C reflects the sales of Leica survey products between the first inventory (Exhibit A) and the second inventory (Exhibit B).  *Id.*  Indeed, the column titled "Cost" on Exhibit C represents the wholesale cost of each item purchased by Plaintiff from Leica and then sold on

eBay.  The problem is that the "Cost" column on Exhibit C only adds up to $100,643.10, not the $186,769 Coenen suggests it should.   In other words, Coenen suggests that between December 15, 2008 and February 24, 2012 Plaintiff sold $186,769 worth of Leica survey products, but Exhibit C – the record of those sales – shows that Plaintiff only sold $100,643.10 worth of products.  The discrepancy means Coenen has completely failed to account for $86,125.90 in Leica surveying product inventory, and there is no indication what happened to the products.[4]

It is unknown if this inventory was sold, destroyed, lost, or given away. Coenen provides no explanation for the $90,000 in unaccounted inventory, but nonetheless shifts responsibility for that inventory to Leica.  Because Coenen has failed to account for $86,125.90 of the claimed $167,197 inventory loss (more than half of the claimed damages), Coenen's opinion on this topic lacks any reliability.

Second, Coenen acknowledges in her report that as of February 24, 2012 (four days before Coenen's report), Plaintiff held $24,872 of Leica surveying products in inventory.  Coenen Rep. 2.  But Coenen fails to account for the value of the remaining inventory in her inventory loss calculation.  Coenen states simply that the remaining inventory is "unlikely to be sold."  Coenen provides no

---

[4] To characterize the issue differently, according to Coenen, Plaintiff had $211,641 in inventory in 2008, then, over the next four years, sold $100,643.10 worth of that inventory, and ended up in 2012 with $24,872 worth of inventory.  Where is the missing $86,125.90?

explanation whatsoever for why the inventory is unlikely to be sold.  On its face,

Coenen's inventory loss calculation would award Plaintiff $24,872 for the

remaining inventory, while also allowing Plaintiff to retain the remaining inventory

– an obvious double-counting.

Third, even $44,444 identified by Coenen as "Sales of Products" (i.e.,

proceeds from sold inventory) is incorrect and understated.  As Coenen explained

in her deposition, she performed no audit or investigation into the proceeds derived

from the sale of the Leica survey product inventory, but instead based her analysis

completely on a spreadsheet created and provided by Plaintiff.  Coenen Dep.

27:17-29:8.

The original spreadsheet provided by Plaintiff to Coenen contained eBay

sales of remaining Leica surveying inventory that occurred after the contract

termination.  Plaintiff's original spreadsheet showed that he sold the inventory on

eBay for $85,443.58, but had not received payment for $41,000 worth of the goods

sold.[5]  *See* **Exhibit 3**, Bate number S1000156.  Coenen testified that she asked

Plaintiff why he did not receive payment, and Plaintiff had no idea why he did not

---

[5] Plaintiff's original inventory spreadsheet shows that the unpaid amount related to
a single eBay transaction.  *See* **Exhibit 3**, Bate number S1000156.   According to
Plaintiff's spreadsheet, Plaintiff sold a kit of Leica survey products that cost
Plaintiff $28,769.90, and which, he sold on eBay for $41,000, but never received
payment.  As such, Plaintiff actually would have made a profit on the inventory if
he had collected payment.

receive the $41,000.  Coenen then decided to deduct the $41,000 from the total

proceeds from the sale of goods, thus increasing the amount of loss she claims

Leica is responsible for by $41,000.  Coenen Dep. 29:3-20.

Coenen testified that she made the decision to shift Plaintiff's self-inflicted

losses from the unpaid eBay sale to Leica because:

> My understanding is that this equipment was only sold on eBay
> because an agreement could be – could not be reached on returning
> the inventory to Leica.  [Plaintiff] wouldn't have otherwise chosen to
> try to liquidate the inventory on eBay.  So using that logic, the
> surveying inventory loss in total that I've calculated is still attributable
> to this dispute.

Coenen Dep. 29:25-30:7.  Coenen's approach strains credulity.  Under Coenen's

theory, Leica is responsible for a $41,000 unpaid eBay sale, even though Plaintiff

offered no explanation as to why Plaintiff did not receive payment.  According to

Coenen, Plaintiff could have exercised zero diligence in the sale of the inventory,

and with no explanation for the lack of diligence, shift whatever alleged financial

loss to Leica because it is "attributable to this dispute."  Coenen's conjecture on

this issue is precisely the type of expert testimony that risks being "assigned

talismanic significance in the eyes of lay jurors" merely because it comes from the

mouth of Plaintiff's damages expert when in fact she is merely parroting the

mathematical calculation (or miscalculation) and conclusion of her client, the

Plaintiff.

As shown above, the calculation of inventory loss should have been a fairly straightforward computation – one that does not require an expert opinion at all. Even so, Coenen completely botched this basic analysis.  Coenen double-counted remaining inventory, failed to account for nearly $90,000 in missing inventory, and baselessly passed on alleged unpaid eBay transactions to Leica, without basis or explanation.  Coenen's opinion on inventory losses is plainly flawed, and her methods are unreliable.  Coenen's testimony on this issue would not assist the trier of fact, and she should be excluded from testifying on inventory damages.

## IV.   THE COURT SHOULD EXCLUDE COENEN'S TESTIMONY REGARDING SPECULATIVE AND STAGGERING ALLEGED LOST PROFITS.

Coenen's final opinion regarding Plaintiff's alleged lost profits of $1.7 million to up to $2.6 million—by far the largest component of Plaintiff's claim for damages—is unreliable and conjectural, and should be excluded.  Coenen's opinions on lost profits are based on sheer speculation about future sales and profits which stretch out as many as 25 years simply because Plaintiff's counsel asked Coenen to use this time period without offering or holding any opinion of her own on the lost profits period.

Q.     Ms. Coenen, if you could turn to page four of your expert report, on the – after that calculation, the annual lost profit calculation.  So you've been asked to calculate damages using periods of loss of 15, 20, and 25, years, demonstrating a range of damages that are likely to have been suffered  Do you see that?

A.    Yes.

Q.    Who asked you to use these time periods?

A.    Counsel.

Q.    Do you have an opinion, your own opinion, on what time period is appropriate –

A.    No.

Q.    -- for lost profit damage calculation?

A.    No.

Q.    You've not been asked to give your own opinion?

A.    Correct.

Coenen Dep. 71:6-22

In addition, although Coenen concedes that two common methods of calculating lost sales are (1) comparing a company's profits prior to the harmful event, to actual profits after the harmful event, and (2) using benchmark data, such as data from another company, industry averages and norms, etc.,[6] as shown below, Coenen used neither method in this case.

Courts have long recognized the "difficulties of proving lost profits." *General Leaseways v National Truck Leasing*, 744 F.2d 588, 591 (7th Cir. 1984). "[P]roof of anticipated profits contains an inherent element of conjecture and therefore * * * a plaintiff has a more difficult time in bearing his burden of proving the fact and amount of damages to a reasonable degree of certainly." *Aldon Indus., Inc v. Don Myers & Assoc.*, 517 F.2d 188, 191 (5th Cir. 1975). For that reason, the

---

[6] *See* Coenen, Tracy, "The Devil is in the Details:  Lost Profits Calculation," an accurate copy of which is attached hereto as **Exhibit 4**.

Eleventh Circuit has held that a district court acts well within its broad discretion to exclude expert testimony on lost profits that fails to satisfy the rigorous three-part *Daubert* test.  *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1027 (11th Cir. 2014) (holding that district court properly excluded plaintiff's expert on lost profits damages where expert's testimony would not have assisted the trier of fact (*i.e.*, the second *Daubert* prong) and the expert's methodology was not sufficiently reliable (*i.e.*, the third *Daubert* prong)).  And when conjectural damages testimony does get to the jury, the appellate courts frequently reverse future lost profit awards, particularly when as here the testimony on purported profits is based on hoped-for sales or stretch far into the future.  *Toulon v. Nagle*, 67 Wis. 2d 233, 254, 226 NW2d 480, 491 (1975) (attempting to calculate lost profits beyond the year that defendant breached the contract "would be most uncertain and wholly speculative"); *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 505-06 (7th Cir. 1992) ("Nothing but conjecture" supports conclusion plaintiff could have sold 25, 2000 bottles of a new shampoo product).

This case presents an extreme version of the "inherent element of conjecture" in a lost profits claim.  *Aldon Indus.*, 517 F.2d at 191.  Coenen's testimony rests on the assumption that a small company selling Leica survey

products for only 3 1/2 years before termination[7] would have had sales that remained at no less than the same level as during the year of termination for the next 25 years.  There is no factual support for Coenen to opine with any reasonable certainty that Plaintiff would have attained the same amount of sales or profits, but for the termination.  Further, there is no sound analysis for projecting such huge profits for a young business for so long into the future.  The future lost profits at issue here are, at bottom, based on nothing more than Plaintiff's and his expert Coenen's hopes and dreams.  If cloaked in the imprimatur of an "expert" opinion, Coenen's absurd and irrational assertions on lost profits certainly risk the danger of unfair prejudice and confusion to the jury.

### A.    Coenen's Lost Profits Methodology.

Although Coenen, as noted above, has observed that a before and after analysis is a common method for determining lost profits, she did not use that method to calculate Plaintiff's purported lost profits.  *See* footnote 6 *supra*.  Rather, Coenen claims she attempted to calculate Plaintiff's gross profit from sales of Leica survey products for 2004, 2005, and 2006.  Coenen was forced to extrapolate these gross profit figures, however, because, apparently, Plaintiff had no actual record of his sales, costs, or profits for the Leica survey products.

---

[7] The survey contract was entered into in April 2003 and Leica's termination notice of September 29, 2006 was effective 90 days from the date of the letter.

Although Coenen had access to Plaintiff's entire general ledger, she declined to use the information contained in the ledger because it was not in a helpful format. Coenen Dep. 43:1-44:5.  Instead, Coenen relied on summaries about Plaintiff's inventory purchases prepared many years after the relevant period, and Plaintiff's tax returns, which contained some aggregated data prepared for tax purposes.  *Id.* at 50:5-9.  Ultimately, Coenen reached the following conclusions:

| Year | Sales | Cost of Goods Sold | Gross Profit | Gross Profit Percentage |
|------|-------|--------------------|--------------|-------------------------|
| 2004 | $ ██████ | $ ██████ | $ ██████ | ████ % |
| 2005 | $ ██████ | $ ██████ | $ ██████ | ████ % |
| 2006 | $ ██████ | $ ██████ | $ ██████ | ████ % |

In calculating future lost profits, Coenen essentially threw out the figures for 2004 and 2005, stating "[i]t appears that the gross profit percentages in 2004 and 2005 differed due to the start-up of the operation and additional discounts offered to customers in order to earn their business."  Coenen Rep. 3.  Coenen provided no explanation or evidence for her conclusion.  Coenen then adopted a gross profit percentage of ██% for the Leica survey products, despite the wide swings in profit percentages in 2004 and 2005, stating that this amount was consistent with the 2006 percentage (██%) and the Survey Dealer Discount Schedules from 2002 and 2003.  Coenen Rep. 3.

Next, Coenen addressed additional "variable selling costs" which she contended should include commissions, contract labor, employee benefits, office expense, repairs and maintenance, supplies, and wages.  Without any explanation of the records reviewed, or how she reached her conclusion, Coenen opined that the variable selling costs equal ██% of total revenue.  Coenen Rep. 3.  Coenen failed to account for any fixed costs associated with Plaintiff's business in calculating cost of the Leica goods sold.

Using only her 2006 figures, Coenen then calculated an "annual lost profit" figure based on the assumption that "it is reasonable to believe that [Plaintiff] would have continued to sell Leica surveying products at or above the level of 2006 sales for the foreseeable future . . . ."  Coenen Rep. 3-4.  In other words, Coenen tried to figure out Plaintiff's profits on the Leica survey products for 2006, and then assumed that Plaintiff would make that same hypothetical profit every year in perpetuity.  Coenen determined the "annual lost profit" to be $██████.  Coenen then multiplied $██████ by 15 years, 20 years, and 25 years to determine Plaintiff's lost profits for those year ranges.[8]

In sum, Coenen's lost profit calculation was based on the following formula:

---

[8] Coenen also discounted the future value of the purported lost profits to present value.  Coenen Rep. 4.  Although likely flawed as well, Leica is not challenging Coenen's discounting calculation for the purposes of this motion.

17



As shown below, nearly every aspect of Coenen's lost profit calculation is fundamentally flawed, rendering her opinion on this topic wholly unreliable and unhelpful.

### B. The Facts Underlying Coenen's Lost Profits Analysis are Unreliable.

Like her opinion on inventory loss, Coenen's opinion about lost profits is based entirely on spotty, untested information provided by Plaintiff.  At her deposition, Coenen struggled to explain how she determined Plaintiff's gross sales of Leica survey products.  Coenen Dep. 54:12-61:10.

In order to create Plaintiff's gross sales figures of Leica survey products in 2006, Coenen engaged in a massive analytical leap.  Coenen explained that she had no direct accounting of Plaintiff's gross sales of Leica survey products, and, instead, considered two documents: a summary document prepared by Plaintiff for this litigation and Plaintiff's tax returns for 2006 – neither document identified actual gross sales of Leica survey products.  Coenen Dep. 60:25-61:2 (referring to Bate number SI000111).  Coenen considered the summary document prepared by Plaintiff, and calculated the percentage of total equipment purchases made up of

Leica survey products (i.e., $580,000 \div $720,167 = 80.5\%$). Then, Coenen reviewed Plaintiff's tax returns, which contained total gross receipts (i.e., income) for Plaintiff for the year (for all products). Coenen then multiplied the total gross *receipts* by the percentage of Leica *purchases*, approximating the amount of sales of Leica survey products for the year.

There is no indication that Coenen's guesswork for calculating gross sales even comes close to Plaintiff's actual sales numbers. For example, assume Plaintiff purchased a total of $100 worth of equipment for resale in a given year, made up of $60 worth of Leica products and $40 worth of Acme products. Then, assume Plaintiff had $140 in total combined sales for the two products for the same year. Under Coenen's approach, she would assume $84 of the total sales revenue (i.e., receipts) derived from Leica sales, and the remaining $56 derived from Acme sales. But it is equally plausible that Plaintiff sold all the Leica products for $100 (for a $40 Leica profit), and the Acme products for $40 (breaking even), or that Plaintiff sold the Leica products for $60 (breaking even) and the Acme products for $80 (for a $40 Acme profit). Coenen's approach completely ignores the likelihood that Plaintiff's total sales revenues were not proportional to Plaintiff's total purchase expenditures. Some products are simply more profitable than

19

others.  Coenen's blind assumption that sales directly track expenditures is unsupported, and renders her entire lost profits calculation unreliable.[9]

Coenen made a similar error in determining the cost of goods sold for Leica survey products.  Again, Coenen did not have direct evidence of the cost of goods sold, so she had to extrapolate a figure for cost of goods sold.  Again, Coenen calculated a percentage of Leica survey product purchases relative to Plaintiff's total purchases for the year.  Then, Coenen multiplied the total cost of goods sold (as stated in Plaintiff's tax returns) by the percentage of Leica product purchases.  Coenen then dropped the result into her formula.  As before, there is no indication that Plaintiff's actual cost of goods sold for the Leica products was directly proportional Plaintiff's annual product purchases for all products.  In fact, because Coenen failed to look at <u>any</u> documents underlying Plaintiff's spreadsheet summary or Plaintiff's tax returns, Coenen could not have even known what purchases and costs were included in the two figures.

Coenen's entire "annual lost profit" calculation is based on her manufactured and speculative figures for annual Leica survey product sales and cost of goods sold.  Coenen did not test her assumptions, did not review any underlying data, and failed to demonstrate in her report that her methodology is

---

[9] Plaintiff could have provided Coenen with direct evidence of Leica sales, but did not do so.

sound or accepted.  Accordingly, Coenen's entire calculation of "annual lost

profits" is unreliable and unhelpful.

### C.   Coenen Improperly Based Decades of Alleged Lost Profits on Extrapolated 2006 Figures Without Any Effort to Demonstrate the Propriety of 2006 as a Benchmark.

Rather than relying on available and expansive evidence of a history of

profits, Coenen merely uses *one year* of Plaintiff's alleged 2006 profits to project

so-called lost "future profits" out 15, 20, and 25 years into the future.  This

analysis is flawed in multiple ways.  Coenen ignored the sales and profit values

from 2004 and 2005, presuming that those years were somehow skewed.  Coenen

provided no analysis or support for her rejection of the 2004 and 2005 margins.

Moreover, Coenen provided no support for her assumption that "[Plaintiff] would

have continued to sell Leica surveying products at or above the level of 2006 for

the foreseeable future . . . ."  Coenen Rep. 3.

Such bald conclusions—especially in view of the drastic economic downturn

of the Great Recession starting in mid-2007 that negatively impacted the

construction industry in particular—are the epitome of impermissible expert

witness *ipse dixit*, and cannot, as a matter of law, support an award for constant,

ongoing sales stretching far into the future.  *See Mid-America Tablewares v. Mogi

Trading Co.*, 100 F.3d 1353, 1368 (7th Cir. Wis. 1996) (reversing future lost

profits award in part because damages expert engaged in "outright guessing" that sales figures would remain constant for four years after breach of the contract); *Toulon*, 67 Wis. 2d at 254.  Indeed, many courts have rejected such rank speculation as predictions of future profits based on "thin air." *American Rd. Equip. Co. v. Extrusions, Inc.*, 29 F.3d 341, 344 (8th Cir. Neb. 1994) (holding that damages expert assumption that profits would remain unchanged from year to year was "pure speculation and conjecture" where damages expert had no first-hand knowledge of the business, and simply relied on projections provided by plaintiff).

Importantly, Coenen's report fails to account for real world facts, such as the Great Recession or other marketplace events.  *See Graham v. Graham,* No. CV409-128, 2010 U.S. Dist. LEXIS 102929, at *27 (S.D. Ga. Sept. 29, 2010) (appellee's yield was trending downward; hence, the data indicates uncertainty at best or a downward trend).  Coenen's lost profits analysis improperly relies on a single year (2006) as a benchmark for decades of alleged lost profits, without any support, and is, therefore, unreliable and unhelpful.

### D.   Coenen Has No Opinion On the Duration of Lost Profit Damages, But Merely Used the Time Periods Provided By Trial Counsel.

Coenen's report does not explain the rationale for, and has no basis in fact or law, for projecting profits so far into the future (i.e., 15, 20, and 25 years). Instead, Coenen was merely "asked" by Plaintiff's lawyers to calculate damages using

these lengthy periods.  Coenen Dep. 71:6-13.  Thus, even assuming, *arguendo*, that in some cases an aspect of a lost profit damages opinion could be accepted based on a expert's professional judgment pertaining to the duration of damages, this is not the case.  Coenen has no opinion on the duration of lost profit damages.

Plaintiff through his expert Coenen has not shown that his business was financially harmed by the acts of Leica.  Plaintiff's business easily could have been (or in fact was) reduced in the interim by other forces such as the recession; or either side's ability to terminate the relationship with or without cause on written notice; or changes in ownership; or mitigation.  Coenen Dep. 81:25-82:24.  By failing to provide or hold any opinion on the appropriate duration of a lost profits award, Coenen fails to give any real guidance on what future lost profits are actually attributable to Leica.  The inclusion of the aggregated value of future of lost profits in Coenen's opinion, without some guiding opinion (other than Plaintiff's trial counsel's) on why the forecasted profits should be aggregated for such a long time, renders her opinion meaningless.  It ensures unfair prejudice and confusion to the jury from Coenen's faulty calculations and staggeringly long time periods provided by counsel which are simply Plaintiff's unrealistic hopes expressed through the mouth of an expert.

### E.     Coenen Fails to Account for Mitigation in her Opinion on Lost Profits.

Coenen's report completely ignores potential mitigation with regards to future lost profits.  Coenen suggests that Plaintiff should recover $▓▓▓▓▓▓ every year, for 25 years, due to the termination of a survey contract that was terminable on 3 months written notice without cause and 30-days notice with cause.  *See* Docket# 8-2 (Am. Comp. Ex. A (Distribution Agreement)).  Coenen makes no effort whatsoever to account for Plaintiff's duty (and ability) to mitigate damages.  Coenen presumes, for example, that Plaintiff has not yet, and never will, take any steps to avoid the alleged profits he lost when the Leica contract for survey products was terminated.  In addition, for purposes of a Wisconsin Fair Dealership Law analysis, Coenen assumes that Leica would never have good cause to terminate Plaintiff or that Plaintiff upon notice would have always cured the problem (*e.g.*, missed performance target) over a 25-year period.  Coenen's lack of consideration of mitigation is particularly glaring given Plaintiff's admitted success selling substitute Sokkia survey products, which compete directly with Leica survey products.  Deposition of Cliff DeTemple, March 25, 2009, 54:17-55:4. 55:19-22, Bowler Decl. Exh. A, Docket# 36-4.

In sum, Coenen's lost profits model is fundamentally flawed, and she should be excluded from offering any testimony on lost profits at trial.  Coenen's lost

profits opinion lacks any of the hallmarks of reliability required under the *Daubert* standard.  *Otis v. Doctor's Assocs.*, 1998 U.S. Dist. LEXIS 15414 (N.D. Ill. Sept. 10, 1998)(rejecting expert opinions on future lost profits where opinions were untested, based on unreliable data, and failed to consider market conditions). Coenen's opinion is admittedly based on an unaudited, self-serving summary document prepared specifically for this litigation, and summary data created by Plaintiff in support of tax filings.  Coenen has taken no steps to conduct an independent and objective review of the underlying facts of this case.  Coenen has provided no industry analysis.  She has not conducted any before-and-after profits analysis.  She has not shown that her methods are appropriate for this type of calculation, that the methods have been peer-reviewed, or have been scrutinized.

## **CONCLUSION**

For the foregoing reasons, Leica respectfully requests that the Court grant its motion to exclude Coenen from testifying as an expert witness on damages.

Dated this 18th day of March, 2015.

By: ___/s/ *John M. Bowler*___
John M. Bowler, Georgia Bar No. 071770
**Troutman Sanders LLP**
600 Peachtree Street, NE, Suite 5200
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
john.bowler@troutmansanders.com

COUNSEL FOR DEFENDANT LEICA
GEOSYSTEMS INC.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing memorandum, including footnotes, has

been prepared in Times New Roman 14 font and is in compliance with Local Rule

5.1.

By: ___/s/ *John M. Bowler*_____

26

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CLIFF DETEMPLE D/B/A TURNING POINT SYSTEMS GROUP, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 1-09-CV-03272-RTS |
| LEICA GEOSYSTEMS INC., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2015, the undersigned caused a true and correct copy of the **BRIEF IN SUPPORT OF DEFENDANT LEICA GEOSYSTEMS, INC.'S DAUBERT MOTION/MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS TRACY L. COENEN** to be served upon counsel of record via the Court's CM/ECF filing system.

By:  \_\_/s/ John M. Bowler_____
John M. Bowler
Georgia Bar No. 071770
**Troutman Sanders LLP**
600 Peachtree Street, NE, Suite 5200
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
**john.bowler@troutmansanders.com**