# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CLIFF DETEMPLE D/B/A TURNING POINT SYSTEMS GROUP, ) ) ) Plaintiff, ) ) ) v. ) ) ) LEICA GEOSYSTEMS INC., ) ) Defendant. ) _____ ) | CIVIL ACTION FILE NO. 1-09-CV-03272-RWS |

## DEFENDANT LEICA GEOSYSTEMS, INC.'S
## BENCH BRIEF REGARDING SCOPE OF DAMAGES
## TESTIMONY OF FED. R. EVID. 701 LAY WITNESS CLIFF DETEMPLE

Plaintiff Cliff DeTemple's ("Mr. DeTemple") Statement of Damages in Attachment C.III of the final Pretrial Order included only two theories of recovery in the jury trial (1) Value of Inventory at time of Termination of $167,197.00, and (2) Lost Profits of $2.6 million calculated by his damages expert Tracey Coenen ("Coenen") . [Doc. 83 at 39-40].[1] In light of the Court's ruling on June 30, 2015 excluding testimony from expert Coenen ("Coenen") as to lost profits [Doc. 108], Defendant Leica Geosystems, Inc. ("Leica") submits this *Bench Brief* regarding

---

[1] DeTemple also seeks attorney's fees and costs which will be considered separately by the Court only in the event of a jury verdict for DeTemple on his Wisconsin Fair Dealership Law claim.

any opinion testimony from lay witness Mr. DeTemple, Owner of Turning Point Systems Group, regarding lost profits.  To the extent that counsel for Mr. DeTemple may seek to elicit testimony from Mr. DeTemple on the subject of lost profits to supplement the damages record at trial, Mr. DeTemple has already **twice** admitted under oath that he is not offering and lacks the personal knowledge – let alone specialized knowledge – necessary to proffer such testimony in this case.  He has thus waived the opportunity to present testimony on lost profits at trial, and should therefore be precluded from testifying on lost profits.

Testimony from Mr. DeTemple regarding lost profits also falls outside of the scope of opinion testimony by lay witnesses permitted by the Federal Rules of Evidence and would require that Mr. DeTemple draw up the same "specialized knowledge" for which his counsel hired Coenen to opine.  Therefore, lost profits are no longer a part of this case, and the Court should preclude Mr. DeTemple from testifying on lost profits.

## I. MR. DETEMPLE HAS TWICE ADMITTED UNDER OATH THAT HE HAS NO PERSONAL KNOWLEDGE OR OPINION TO OFFER IN THIS CASE ON LOST PROFITS

Mr. DeTemple admitted during both of his depositions in this litigation that he has no opinion on lost profit and sales damages, and that he merely relied on his counsel and Coenen's analysis to establish his lost profits claim.  In his March 25,

2009 deposition (when the suit was pending in Wisconsin district court), Mr. DeTemple testified in no uncertain terms that he had no opinion on lost sales:

> Q: […] Are you making a claim in addition to the equipment inventory, some component of damages based on lost sales?
> A: I don't know.
> Q: If you know, do you know over - - if you were to make a claim to Leica over lost sales, do you know that time period?
> A: Whatever the law allows.
> Q: So you're deferring to your lawyer to work that out?
> A: (Witness nods head.)

March 25, 2009 Deposition of Cliff DeTemple at 197:21-198:6.

Later in his March 27, 2012 deposition in the Georgia action, Mr. DeTemple confirmed unequivocally that he had no opinion on lost profits to proffer at trial and was relying solely on the now-excluded lost profits opinion of Coenen:

> Q: Aside from Ms. Coenen's report, do you have your own opinion on what lost profit you contend you've suffered?
> A: Do I have an opinion?
> Q: Yeah.
> A: I mean, I have my idea, yeah, that - - on sales, but - -
> Q: That's why I'm trying to cut to the chase, is *at trial do you intend to offer, you know, your own opinion aside from Ms. Coenen's testimony on what you believe your lost profits were*?
> A: I don't know at trial what I'll be asked.
> Q: Okay. But you've made - - up to this point *you've made no - - your own calculation of what you believe your lost profits are*?
> A: *At – to this day, no.  I'm going to be relying on Ms. Coenen*.

3

March 27, 2012 Deposition of Cliff DeTemple at 131:3-19.[2]

Counsel for Leica has twice attempted to depose Mr. DeTemple and identify the scope of his potential trial testimony if any on lost profits, and twice received confirmation that Mr. DeTemple had no opinions to offer at trial. Mr. DeTemple has maintained for **six years** that he was not responsible for testifying on his alleged lost profits, and that he would instead rely on his counsel's strategy and the testimony of Coenen. Thus, Leica has no idea what testimony Mr. DeTemple could purport to offer at trial on the subject of lost profits.

Then, on July 1, 2015, the Court issued an Order excluding Coenen from testifying regarding lost profits given the unreliability of her report. [Doc. 108 at 4.] Leica has serious concerns that Mr. DeTemple may now seek to fill the void left by Coenen's excluded testimony by himself offering an opinion on lost profits. However, were Mr. DeTemple to now sandbag Leica with new testimony on lost profits, Leica would be highly prejudiced having had no opportunity to fully depose Mr. DeTemple on the issue. Mr. DeTemple's failure to provide any testimony on lost profits prior to trial is a clear waiver of the opportunity to do so, and such testimony should be precluded.

---

[2] *See also* March 27, 2012 Deposition of Cliff DeTemple at 8:20-9:5 (stating that Mr. DeTemple had retained a damages expert since his prior deposition who would be putting a dollar figure on the money damages he seeks in this lawsuit).

Any testimony offered by Mr. DeTemple on lost profits at trial would be a new, previously undisclosed damages calculation and theory impeding and prejudicing Leica's ability to defend against the damages claim at trial.  The Court would have to halt and move the trial date to allow Leica to conduct additional discovery to learn DeTemple's lost profit calculation and theory, which demonstrates that Mr. DeTemple's failure to disclose his opinion on lost profits earlier was not harmless.  *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (A party that "fails to provide information . . . as required by Rule 26(a) . . . is not allowed to use that information or witness to supply evidence . . . at trial unless the failure was substantially justified or is harmless.") (internal quotation marks and citations omitted)); *see, e.g.*, *Nance v. Ricoh Elecs., Inc.*, 2008 U.S. Dist. LEXIS 27909, 8-9 (N.D. Ga. Mar. 31, 2008) (Story, J.) (finding failure of the plaintiff to comply with disclosure rules was not harmless given the defendant had no opportunity to depose the witness in question during the discovery period).

## II.  MR. DETEMPLE SHOULD BE PRECLUDED FROM GIVING EITHER EXPERT OR LAY OPINIONS ON LOST PROFITS

The only damages theory advanced in this case was Coenen's, which was excluded and should not be admitted through Mr. DeTemple.  Mr. DeTemple is not an expert on damages theories by education or experience nor ever disclosed as

5

such pursuant to Fed. R. Civ. P. 26(a)(2) or Fed. R. Evid. 207 and cannot now submit an alternative lost profits theory.

Nor can Mr. DeTemple escape this conclusion by giving expert testimony in the guise of a lay witness under Fed. R. Evid. 701, which reads:

> **If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are** (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701 (emphasis added).[3]

Mr. DeTemple's testimony on lost profits is inadmissible as lay opinion under this standard. The Eleventh Circuit has held that "[w]hile lay witnesses may testify about their own immediate perceptions, testimony that blurs into supposition and extrapolation crosses the line into expertise." *Lebron v. Sec'y of the Fla. Dept. of Children & Families*, 772 F.3d 1352, 1372 (11th Cir., 2014). "[T]he ability to answer hypothetical questions is 'the essential difference' between expert and lay witnesses," and has been prohibited among lay witnesses

---

[3] Rule 702 addresses testimony by experts and provides that:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify in the form of an opinion or otherwise.

by the Eleventh Circuit.  *U.S. v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) *citing Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1202 n.16 (3rd Cir. 1995). See also *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312.

This Court has recognized that "lay testimony 'results from a process of reasoning familiar in everyday life,' whereas expert testimony 'results from a process of reasoning which can only be mastered by specialists in the field.'" *Tischon Corp v. Soundview Communs., Inc.*, 2006 U.S. Dist. LEXIS 97309, *33, Civil Action No. 1:04-cv-524-JEC, (N.D. Ga. Feb. 14, 2006).  Further, the notes to the 2000 Amendments specifically provide that the amendment to Rule 701 "ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 . . . by simply calling an expert witness in the guise of a layperson."

Testimony regarding lost profits necessarily involves opinions based on specialized knowledge falling within the meaning of Rule 701(c); for example, knowledge of accounting and economic principles. *Chesapeake Corp. v. Sainz*, No. 3:00cv816, 2002 U.S. Dist. LEXIS 28702, *56 (E.D. Va. Mar. 19, 2002) (excluding testimony of a lay witness as to lost profits where the witness was unqualified to perform the calculations and where the witness failed to consider myriad factors having an impact on profitability).  Therefore, a projection of lost

profits will often require some form of expert testimony.  *KW Plastics v. US Can Co.*, 131 F. Supp. 2d 1265, 1275 (M.D. Ala. 2001).

Where a lay witness purports to testify on lost profits without the benefit of an expert, the witness cannot "testify as to what the 'bottom line number' should be" where the witness himself "cannot 'do the math'." *Id.* at 1273.  Even where a lay witness has some industry experience and can provide some economic testimony and data, "it does not necessarily follow that he has personal knowledge sufficient to project lost profits for [even] six years into the future <u>on the basis of the loss of customers that [he] never had</u>." *Id.* at 1274 (emphasis in original).  A lay witness' testimony on lost profits is also insufficient where factors of the damages calculation were provided by counsel and the witness "appears to have no ability to explain or apply" those factors himself.  *Id.* at 1274-75.

Mr. DeTemple stated repeatedly that the issue of lost profits was outside of the scope of his personal knowledge.  *See* Section II *supra*.  Therefore, any testimony offered by Mr. DeTemple on lost profits would necessarily depend on hypothesis and supposition, rather than the "witness's perception." Fed. R. Evid. 701(a).  Mr. DeTemple's use of an expert to calculate *damages* acts as an admission that expertise is required in this case in order to accurately determine lost profits.  And, accordingly, Ms. Coenen's report *implemented* techniques

outside the purview of a layperson such as Mr. DeTemple – *i.e.*, the use of net present value accounting for the time value of money, rate of return for the present value calculation, apportionment of revenues and profits attributable to different product lines, etc. There is no evidence in the record suggesting that Mr. DeTemple would be able to independently utilize the same techniques, let alone explain how the calculation of lost profits is properly performed. Nor has Mr. DeTemple demonstrated knowledge of accounting or economic principles sufficient to justify a projection of lost profits 15-25 years into the future based on sales to customers that he never had. *See generally KW Plastics*, 131 F. Supp. 2d 1265.

     Having formed no independent opinion on lost profits, Mr. DeTemple cannot now generate his own, new damages theory. He is entirely unqualified to do so, particularly given the extended multi-year projection for which he, through expert Coenen, has heretofore claimed lost profits, and any such testimony would improperly cross the line into expert testimony pursuant Rule 702. Mr. DeTemple, who has no personal knowledge necessary under Rule 701 regarding his alleged lost profits, would be required to improperly rely on and parrot either (1)

information provided by counsel or (2) Coenen's excluded testimony.[4] Allowing Mr. DeTemple to testify on the issue of lost profits would circumvent the exclusion of Coenen's testimony and confuse the jury with testimony that Mr. DeTemple is by his own admission unable to give.

## III. CONCLUSION

To the extent that Mr. DeTemple may now be offered for the first time to give opinions on lost profits, thereby avoiding both Rule 26's expert witness disclosure requirements and the Federal Rules of Evidence regarding the bounds of lay and expert opinions, his testimony should be excluded. Indeed, there is no good reason to allow surprise testimony on lost profits for which Mr. DeTemple was never offered, to the prejudice of Leica.

---

[4] This Court has already determined that "Ms. Coenen failed to state a reliable basis for her projection of future lost profits in her expert report, as required by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and Daubert." [Doc. 108 at 4].

Respectfully submitted this 6th day of July, 2015.

/s/ *John M. Bowler*
John M. Bowler, Georgia Bar No. 071770
john.bowler@troutmansanders.com
Lindsay Mitchell Henner, Georgia Bar No. 272310
lindsay.henner@troutmansanders.com
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
(404) 885-3000
(404) 885-3995 (facsimile)

*Attorneys for Defendant Leica Geosystems, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing memorandum, including footnotes, has been prepared in Times New Roman 14 font and is in compliance with Local Rule 5.1.

By:   /s/ *John M. Bowler*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CLIFF DETEMPLE D/B/A TURNING POINT SYSTEMS GROUP, </br></br>         Plaintiff, </br></br> v. </br></br> LEICA GEOSYSTEMS INC., </br></br>         Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> )   CIVIL ACTION FILE </br> ) </br> )   NO. 1-09-CV-03272-RWS </br> ) </br> ) </br> ) </br> ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2015, the undersigned caused a true and correct copy of DEFENDANT LEICA GEOSYSTEMS, INC.'S BENCH BRIEF REGARDING SCOPE OF DAMAGES TESTIMONY OF FRE 701 LAY WITNESS CLIFF DETEMPLE to be served upon all counsel of record by hand and via the Court's CM/ECF filing system if so instructed by the Court.

By:   /s/ *John M. Bowler*
John M. Bowler
Georgia Bar No. 071770
TROUTMAN SANDERS LLP
600 Peachtree Street, NE, Suite 5200
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
john.bowler@troutmansanders.com