**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CLIFF DETEMPLE D/B/A TURNING )
POINT SYSTEMS GROUP, )
            )
          Plaintiff, )
            )   CIVIL ACTION FILE
v. )
            )   NO. 1-09-CV-03272-RWS
LEICA GEOSYSTEMS INC., )
            )
          Defendant. )
_____ )

**DEFENDANT LEICA GEOSYSTEMS, INC.'S OPPOSITION TO
PLAINTIFF CLIFF DETEMPLE'S MOTION FOR ATTORNEYS' FEES**

John M. Bowler
Georgia Bar No. 071770
john.bowler@troutmansanders.com
Lindsay Mitchell Henner
Georgia Bar No. 272310
lindsay.henner@troutmansanders.com
TROUTMAN SANDERS LLP
600 Peachtree Street, NE, Suite 5200
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

ATTORNEYS FOR DEFENDANT LEICA
GEOSYSTEMS INC.

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

FACTUAL BACKGROUND ................................................................................. 1

ARGUMENT AND CITATION OF AUTHORITY ............................................. 3

I.     The Amount of an Attorneys' Fees Award is Entirely Within the Court's Discretion and is Reviewed Only for Clear Error ............................ 3

II.    DeTemple is not Entitled to Attorneys' Fees Associated With the Wisconsin Case Because He did not Prevail .................................................. 3

     A.     DeTemple's Request for Fees in the Wisconsin Case is Unjustified ................................................................................. 3

III.   DeTemple Requests $105,600.12 in Attorneys' Fees for the Wisconsin Case Which Should be Denied in its Entirety ............................ 7

IV.   DeTemple's Request for Attorneys' Fees is Unreasonable Under the Lodestar Analysis and Should be Reduced Across-the-Board...................... 9

     A.     Schroeder's Fees are Excessive and Should be Reduced in Light of Block Billing and Redundancy Across all of its Invoices ................................................................................... 11

     B.     Schroeder's Self-Imposed Reductions for Unsuccessful Claims are Inconsistently Applied and Warrant Further Reductions ............ 16

     C.     Bovis' Fees are Excessive and Should be Reduced .......................... 20

     D.     Regas' Fees are Unsupported and Should be Excluded.................... 21

     E.     Leica's Proposed Alternative Lodestar Figure.................................. 22

V.     DeTemple's Minimal Success Relative to his Damages Claim Requires an Additional Reduction of Attorneys' Fees by Sixty (60) Percent................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*ACLU of Ga. v. Barnes*,
  168 F.3d 423 (11th Cir. Ga. 1999)...................................................... 3, 11, 20, 22

*Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*,
  Case No., 5:10-cv-329-Oc-10PRL, 2015 U.S. Dist. LEXIS 24081 (M.D.
  Fla. Jan. 14, 2015)........................................................................................ 4, 5, 6

*Andrews v. United States*,
  122 F.3d 1367 (11th Cir. 1997) ...............................................................................24

*B & F Sys. v. Leblanc*,
  Civil Action No., 7:07-CV-192 (HL), 2012 U.S. Dist. LEXIS 90504
  (M.D. Ga. June 29, 2012) ............................................................... 11, 16, 17, 20

*Bivins v. Wrap It Up, Inc.*,
  380 Fed. App'x 888 (11th Cir. 2010) ................................................................ 24

*Buckhannon Bd. & Care Home, Inc. v. W. Va.Dep't of Health & Human
  Res.*,
  532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)....................................4

*Capone v. Aetna Life Ins. Co.*,
  Civil Action No., 1:06-CV-3014-MHS, 2010 U.S. Dist. LEXIS 142281
  (N.D. Ga. Dec. 21, 2010) .....................................................................................9

*Ceres Envtl. Servs. v. Colonel McCrary Trucking, LLC*,
  476 Fed. App'x 198 (11th Cir. 2012) ............................................. 11, 12, 14, 16

*Erkins v. Bryan*,
  785 F.2d 1538 (11th Cir. 1986) ................................................................ 23, 24

*Esch v. Yazoo Mfg. Co.*,
  510 F. Supp. 53 (E.D. Wis. 1981)................................................................. 4, 6

*Farrar v. Hobby*,
  506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)................................... 23

i

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Flagstar Bank, FSB v. Hochstadt,*
Case No. 08-80765-Civ-Hurley/Hopkins, 2010 U.S. Dist. LEXIS 29203
(S.D. Fla. Mar. 4, 2010) ..................................................................... 15

*Gatti v. Cmty. Action Agency of Greene Cty., Inc.,*
263 F. Supp. 2d 496 (N.D.N.Y. 2003), *aff'd*, 86 Fed. App'x 478 (2d Cir.
2004) ................................................................................................... 15

*Hensley v. Eckerhart,*
461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)................................. 9, 23

*James v. Wash Depot Holdings, Inc.,*
489 F. Supp. 2d 1341 (S.D. Fla. 2007) ............................................... 24

*Lindevig v. Dairy Equip. Co.,*
150 Wis. 2d 731 ................................................................................. 4, 16

*Ojeda-Sanchez v. Bland Farms,*
6:08-cv-96, 2013 U.S. Dist. LEXIS 149013 (S.D. Ga. Oct. 16, 2013) ............. 24

*Phillips 66 Co. v. Gish Oil Co.,*
Civil Action No. 7:13-CV-63 (HL), 2015 U.S. Dist. LEXIS 36428 (M.D.
Ga. Mar. 24, 2015) ....................................................................... 20, 21

*Popham v. Kennesaw,*
820 F.2d 1570 (11th Cir. 1987) ...................................................... 3, 24

*Siegel v. Leer, Inc.,*
158 Wis. 2d 621 (Wis. App. 1990) ...................................................... 10

*Signature Networks, Inc. v. Estefan,*
No. C 03-4796 SBA, 2005 U.S. Dist. LEXIS 49124 (N.D. Cal. May 25,
2005) .................................................................................................... 5, 7

*Wisconsin Compressed Air Corp. v. Gardner Denver, Inc.,*
No. 07-cv-508, 2008 U.S. Dist. LEXIS 72409 (W.D. Wis. Sept. 22,
2008) ............................................................................................. 4, 23, 24

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**STATUTES**

Wis. Stat. § 135.06 ......................................................................... 3, 4, 6, 7

Wis. Stat. § 893.93(3)(b) .................................................................... 2

Leica Geosystems Inc. ("Leica") submits this opposition to Cliff DeTemple's ("DeTemple") Motion for Attorneys' Fees and Expenses.  Dkt. 131.  Given that a significant portion of the requested fees are associated with DeTemple's unsuccessful Wisconsin case, and that DeTemple seeks fees for inefficiency, duplication of effort, and unreasonable hours spent on a marginally successful case, Leica requests that any fee award not exceed **$99,100.07**.  Each of these grounds is detailed below.  Taken singly or in combination they warrant the Court's conclusion and discretion to significantly reduce the requested fees in the manner described below.

## FACTUAL BACKGROUND

The Court is familiar with the history of this matter.  The details of DeTemple's claims, and the actual results achieved – and *not* achieved – are essential to determining the amount of reasonable attorneys' fees.

On March 28, 2008, DeTemple sued Leica pursuant to the Wisconsin Fair Dealership Law ("WFDL") in the Eastern District of Wisconsin.  Dkt. 36-9 (Ex. F).  He alleged their relationship was a "dealership" within the scope of the WFDL and that Leica improperly terminated the relationship.  *Id.* at ¶¶ 18-20.  DeTemple amended his complaint, again in Wisconsin, to add claims for alleged breach of contract.  On June 24, 2009, the Wisconsin court granted Leica's Motion to Dismiss the WFDL claim, with prejudice, as time-barred by the one-year statute of

limitations, Wis. Stat. § 893.93(3)(b).  Dkt. 36-10 (Ex. G).  The court further held

that the breach of contract claims were required to be filed in Georgia under the

forum selection clauses and dismissed the counts "without prejudice." (Wis. Dkt.

48).  On DeTemple's motion for reconsideration, the Wisconsin court amended its

judgment instead dismissing the WFDL claim, like the contract claims, without

prejudice, under the forum selection clauses.  Dkt. 36-11(Ex. H).  As a result,

DeTemple achieved **no success** in the Wisconsin case.

On November 20, 2009, DeTemple then re-filed his action in the Northern

District of Georgia.  Dkt. 1.  On February 27, 2014, this Court granted Leica's

motion for summary judgment and entered judgment in Leica's favor on

DeTemple's breach of contract and WFDL claims.  Dkt. 56.  On March 25, 2014,

DeTemple appealed this Court's Summary Judgment Order to the Eleventh Circuit,

but only the portion holding that his WFDL claim was barred by the statute of

limitations and not the dismissal of his contract claims (Counts II & III).  Dkt. 67.

On August 11, 2014, the Eleventh Circuit entered its opinion reversing and

remanding as to DeTemple's WFDL claim.  Dkt. 72.

At trial, the jury determined that DeTemple was a dealer under the WFDL

and awarded him $167,000.00 on his inventory claim under a mandatory buy-back

provision, and judgment was entered on July 9, 2015.  Dkt. 129 & 130.  In stark

contrast to DeTemple's limited success on his inventory claim, the jury also

determined – in Leica's favor – that DeTemple was terminated for good cause and

denied his **entire** claim for over $2.6 Million in lost profits damages.  Dkt. 129.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### I.    **The Amount of an Attorneys' Fees Award is Entirely Within the <u>Court's Discretion and is Reviewed Only for Clear Error.</u>**

The Eleventh Circuit reviews attorneys' fees awards only for abuse of

discretion.  *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).  It is

within the District Court's discretion to calculate the "lodestar" amount, including

the reasonable rate and reasonable number of hours expended.  *Id.* at 428.  Further,

"if the plaintiff obtained only 'partial or limited success,' the court may reduce the

lodestar amount if it believes that amount is excessive in relation to the plaintiff's

relief."  *Popham v. Kennesaw*, 820 F.2d 1570, 1578-79 (11th Cir. 1987).

### II.    **DeTemple is not Entitled to Attorneys' Fees Associated With the <u>Wisconsin Case Because He did not Prevail.</u>**

#### A.    **DeTemple's Request for Fees in the Wisconsin Case is Unjustified.**

As DeTemple acknowledges, the WFDL allows only "successful" plaintiffs

their costs and attorneys fees.  *See* Dkt. 131-1 at 1 (citing cases).  The relevant

portion of the WFDL, Wis. Stat. § 135.06, is a *prevailing party* provision.  "Under

Section 135.06 of the Wisconsin Statutes, a dealer or distributor who has <u>prevailed</u>

under the Wisconsin Fair Dealership law is entitled to actual cost of the action,

including reasonable actual attorney's fees." *Esch v. Yazoo Mfg. Co.*, 510 F. Supp. 53, 58 (E.D. Wis. 1981) (internal quotation marks omitted) (emphasis added). DeTemple's own case law cited in his fee request under Wis. Stat. § 135.06 is replete with similar statements awarding fees only to successful plaintiffs. *See, e.g.*, *Lindevig v. Dairy Equip. Co.*, 150 Wis. 2d 731, 742 ("Section 135.06, Stats., allows successful plaintiffs their reasonable actual attorneys fees in an action for damages or injunctive relief."); *Wisconsin Compressed Air Corp. v. Gardner Denver, Inc.*, No. 07-cv-508, 2008 U.S. Dist. LEXIS 72409, *4 (W.D. Wis. Sept. 22, 2008) ("a party who, like plaintiff, has won a claim under the Wisconsin Fair Dealership Law, is entitled to an award of 'reasonable actual attorney fees.'").

Dismissal of a claim for jurisdictional reasons does not generally confer prevailing party status, even on the party who successfully achieves the dismissal. *See, e.g.*, *Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*, Case No., 5:10-cv-329-Oc-10PRL, 2015 U.S. Dist. LEXIS 24081 (M.D. Fla. Jan. 14, 2015) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va.Dep't of Health & Human Res.*, 532 U.S. 598 (2001) (a party must obtain some form of relief on the merits in order to be a prevailing party)).[1] Even where a party is ultimately successful in

---

[1] In *Am. Home Assurance Co.*, Weaver sought attorneys fees associated with an earlier-filed case in a different federal court that was dismissed for lack of jurisdiction. 2015 U.S. Dist. LEXIS 24081 at *22. The court, expressing doubt

litigating its claim, the court should not award fees associated with prior improper actions or strategic decisions which the prevailing party made. *See, e.g.*, *Signature Networks, Inc. v. Estefan*, No. C 03-4796 SBA, 2005 U.S. Dist. LEXIS 49124 (N.D. Cal. May 25, 2005).

In *Signature*, Estefan filed an improper declaratory judgment action to secure a favorable forum in Florida prior to her ultimate success as a defendant in a later-filed California action.  2005 U.S. Dist. LEXIS 49124 at *11-12.  The Florida action was dismissed.  In support of her fee request in California, Estefan sought to recover for fees associated with the Florida action and cited law holding that "a plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." 2005 U.S. Dist. LEXIS 49124 at *13.  The court found that such law "does not hold that an 'improper' step can be considered a 'necessary step' to victory," and further, that such an extension of the law "would be illogical — allowing recovery of attorneys' fees for improper actions taken by a prevailing party would reward improperly multiplying the proceedings."  *Id.*

---

that it was the proper forum to consider such a request at all, found that even Weaver's *success* in acquiring the dismissal "d[id] not confer 'prevailing party' status on any party."  *Id.*  The request for fees incurred prior to the filing of the second complaint were denied.  2015 U.S. Dist. LEXIS 24081 at *23.

Here, DeTemple cannot be considered a prevailing party in the Wisconsin case, as his Wisconsin filing was improper—and not a necessary step—and his fee request associated with the Wisconsin case should be denied.  Wis. Stat. § 135.06 allows a prevailing party to recover fees only for the *successful* action, and DeTemple was *entirely un*successful in litigating his WFDL claim in Wisconsin. *See Esch*, 510 F. Supp. at 58 (E.D. Wis. 1981).  DeTemple willingly and tactically chose to file his WFDL claims in the Wisconsin court – rather than in a Georgia court.  Ex. F (Dkt. 36-9).  Leica filed a timely motion to dismiss, which the Wisconsin court granted, thus dismissing the case in its entirety as improperly filed given the forum selection clause in the parties' Distribution Agreement indicating Georgia courts as the proper forum.  Ex. G (Dkt. 36-10); Ex. H (Dkt. 36-11).

Though the Wisconsin court dismissed DeTemple's claims without prejudice allowing him to re-file the instant action in Georgia, no interpretation of the facts would permit considering the Wisconsin result a success.  Leica, for whom judgment was entered in the Wisconsin action – not DeTemple – was the successful party by securing complete dismissal of all claims.  DeTemple achieved no relief on the merits of his WFDL claim as a result of the Wisconsin case, therefore his claim for fees associated with the Wisconsin case should be denied. *See Am. Home Assurance Co.*, 2015 U.S. Dist. LEXIS 24081.

Nor should Wis. Stat. § 135.06 be read to allow DeTemple to recover fees for his counsel's error in judgment in selecting where to file the case. *Signature*, 2005 U.S. Dist. LEXIS 49124. Aware that DeTemple signed a contract identifying Georgia courts as the proper forum, counsel made the informed decision to fight an uphill battle and litigate the merits of the selection clause. His ultimate success in convincing a Georgia jury that the WFDL applies has no bearing on his wholly unsuccessful Wisconsin case; his counsel's error in choosing to first file in Wisconsin should not be rewarded. *Id.* Leica should not be punished for counsel's error in judgment by paying fees that would not have been incurred *but for* DeTemple's decision to litigate a losing issue in Wisconsin. The Court should deny DeTemple's fee request associated with litigating in Wisconsin case entirely.

## III.  DeTemple Requests $105,600.12 in Attorneys' Fees for the Wisconsin Case Which Should be Denied in its Entirety.

The Wisconsin court's final Order issued on October 29, 2009. Dkt. 36-11 (Ex. H). All requested fees incurred before October 29, 2009 – the fees associated with litigating the Wisconsin case – should be deducted *en toto*. Prior to October 29, 2009, DeTemple's representation included attorneys from Regas, Frezadus & Dallas ("Regas") and The Schroeder Group, S.C. ("Schroeder"). In December 2008, DeTemple ended his relationship with Regas and engaged Schroeder to litigate the Wisconsin case. Schroeder invoices reflect that research regarding the

viability of a WFDL claim in Georgia began on October 29, 2009;[2] therefore,

Leica requests that the Court deduct all amounts invoiced prior to October 29,

2009 from any amount awarded in this case.  Regas' invoices [Dkt. 134-1] and

Schroeder's invoices [Dkt. 132-1], submitted with DeTemple's motion, reflect the

following amounts attributable to the Wisconsin case prior to October 29, 2009:

| Attorney/Firm | Amount Invoiced (Wisconsin Case) |
|---|---|
| Unknown Regas Attorneys[3] | $9,603.87 |
| Cindy Fryda (Schroeder) | $43,618.75[4] |
| John Yentz (Schroeder) | $9,975.00[5] |
| Paul Hoefle (Schroeder) | $42,402.50[6] |
| | **TOTAL:      $105,600.12** |

Accordingly, Leica respectfully requests that the Court **deduct $105,600.12** from

DeTemple's total fee request on the grounds that he is not entitled to recover fees

for litigating the Wisconsin case, in which he achieved no success on the merits of

his WFDL claim.  *See* Dkt. 131-1 at 3 (requesting an award of $454,470.72).

---

[2] *See* Ex. 2 to the Hoefle Decl. [Dkt. 132-2] at 12, 16 and 23 (10/29/09 time entries for Ms. Fryda and Mr. Yentz, and 10/30/09 time entry for Mr. Hoefle).

[3] Neither the DeTemple Declaration, nor the invoices attached thereto as Exhibit 1 identify the Regas attorney(s) that performed the work or their qualifications.

[4] This amount reflects 249.25 hours of work at a rate of $175 per hour through October 23, 2009, the date of the last time entry for this timekeeper prior to the Order terminating the Wisconsin case. *See* Dkt. 132-2.

[5] This amount reflects 28.5 hours of work at a rate of $350 per hour through October 22, 2009, the date of the last time entry for this timekeeper prior to the Order terminating the Wisconsin case. *See* Dkt. 132-2.

[6] This amount reflects 121.15 hours of work at a rate of $350 per hour through October 28, 2009, the date of the last time entry for this timekeeper prior to the Order terminating the Wisconsin case. *See* Dkt. 132-2.

**IV.    DeTemple's Request for Attorneys' Fees is Unreasonable Under the Lodestar Analysis and Should be Reduced Across-the-Board.**

The parties agree, as do Eleventh Circuit and Wisconsin courts, that the proper starting point for calculating reasonable attorneys' fees is the calculation of the "lodestar," or "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate for the attorneys' services." *See* Dkt. 131-1 at 2 (citing cases); *Capone v. Aetna Life Ins. Co.*, Civil Action No., 1:06-CV-3014-MHS, 2010 U.S. Dist. LEXIS 142281 (N.D. Ga. Dec. 21, 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Except as noted herein, Leica does not directly contest the reasonableness of the hourly *rates* for the services provided,[7] although the invoices submitted by Schroeder in particular curiously fail to identify actual rates charged until 2015.  In some instances, invoices suggest that counsel's rates may have been *lower than* the range of rates counsel suggests justify the flat rates now sought for work done over a seven-year period.  *Compare* Dkt. 132-1 at 61 (reflecting a 2010 rate of $300/hr for services rendered by Mr. Hoefle) and Dkt. 132-1 at 64 (reflecting a 2011 rate of $310/hr for services rendered by Mr. Hoefle) *with* Dkt. 132 at ¶ 8 (declaration from Mr. Hoefle that, from 2008 to present, his actual rate exceeded $320/hr).

---

[7] With the exception of fees for Regas, Frezados & Dallas, for which no information on attorney identity or qualifications has been provided.

Leica, however, *does* contest the reasonableness of the *hours* expended on the litigation by the at least nine lawyers (including four partners and five associates) and other timekeepers who DeTemple's counsel staffed on this relatively straightforward WFDL case,[8] which warrant this Court's substantial reduction of a fee award.[9]  Although DeTemple's counsel raises "undesirability of the case" (Dkt. 131-1 at 7-8)—as if they accepted an unattractive *pro bono* representation rather than picked this paying commercial client—by no means was this an unpopular or undesirable case for counsel.  All three of DeTemple's law firms' billing records demonstrate that they had little reservation about pursuing this case.  Further, DeTemple's affidavit, which praises the "skill and experience" of all his counsel "in handling cases like mine" (Dkt. 134 at ¶ 7), blatantly contradicts his trial counsel's *ipse dixit* assertion that DeTemple had to substitute counsel to "fully and competently" litigate his rights.  Dkt. 131-1 at 7.

---

[8] DeTemple cites a single 25-year old case acknowledging that the WFDL was then "still relatively new" to suggest this case is somehow "novel." Dkt. 131-1 at 7 (citing *Siegel v. Leer, Inc.*, 158 Wis. 2d 621, 632 (Wis. App. 1990)).

[9] DeTemple's counsel included: from Schroeder, partners Paul Hoefle and John Yentz and associates Cindy Fryda, Amy Lindner, Benjamin Menzel, and Michael Kruse; from Bovis, partner John Burch and associate Randal Bryant; and at least one or more unidentified lawyers from the Regas firm.  In stark contrast, the defense team was composed entirely of one partner (John Bowler) and two associates (Karen Sandrik and Lindsay Henner).  *See* Docket.

Here, a reduction of the fee award is warranted to account for unreasonable hours due to *inter alia* (1) block billing, (2) duplicative work performed by excessive counsel, and (3) work performed on unsuccessful claims.[10]

### A.   Schroeder's Fees are Excessive and Should be Reduced in Light of Block Billing and Redundancy Across all of its Invoices

The Eleventh Circuit has acknowledged the problems created by block billing, which "'makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in [the] litigation… [which is] a 'problem' for which the opponent should not be 'penalized.'" *B & F Sys. v. Leblanc*, Civil Action No., 7:07-CV-192 (HL), 2012 U.S. Dist. LEXIS 90504, *31-32 (M.D. Ga. June 29, 2012) (citing *ACLU of Ga. v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999)).  "Courts have also approved across-the-board reductions in block-billed hours to offset the effects of block billing." *Ceres Envtl. Servs. v. Colonel McCrary Trucking, LLC*, 476 Fed. App'x 198, 203 (11th Cir. 2012); *B & F Sys*, 2014 U.S. Dist. LEXIS 90504 at *34-35 (citing cases reducing fees across-the-board from 10-30% in light of block billing).

In *Ceres Envtl. Servs.*, the Eleventh Circuit upheld a district court decision to reduce hours by ten (10) percent across-the-board in light of block billing:

---

[10] Leica maintains that DeTemple is not entitled to any fees for Schroeder work prior to October 29, 2009.  However, to the extent the Court may disagree, Leica's arguments for across-the-board reductions apply to all Schroeder invoices.

11

> *[T]he district court found that Dix's entries routinely included half a dozen or more separate tasks, making it difficult for the court to gauge reasonableness, and were peppered with vague language* such as "working with [John Doe]," and the even more unhelpful (and somewhat unsettling) entry, "continuing work on case." The district court ultimately concluded that a 10% reduction in Dix's 1,561 hours adequately addressed the block billing issue.

476 Fed. App'x at 203 (emphasis added) (affirming reduction and citing district court's wide discretion in setting appropriate fee award).  That reality is evidenced here.  In line with the pattern of disfavored billing discussed above, it is apparent that there were inadequate efforts made to avoid unnecessary duplication and wasted effort on the part of DeTemple's counsel.  Schroeder's invoices are replete with block entries by nearly all of its attorneys for whom DeTemple seeks fees. *See* Dkt. 132-1.  Similar to *Ceres Envtl. Servs.*, Schroeder's invoices often include a laundry list of tasks per time entry making it impossible to gauge the reasonableness of much of the time spent.  The presence of multiple lawyers clearly exacerbated increased inefficiency, duplication, and excessive billings.

Schroeder's invoices reflect that, for example, timekeeper Ms. Fryda made numerous lengthy time entries without taking care to delineate time spent on discrete tasks.  In a March 19, 2009 time entry, Ms. Fryda billed 6.1 hours to at least four different tasks ranging from general "analysis," to drafting an affidavit, to attending several meetings.  Dkt. 132-1 at 11-12.  On October 30, 2009, she

billed 6.2 hours to *nine different tasks* including but not limited to research, attending conferences, and administrative tasks such as acquiring local counsel and preparing *pro hac vice* applications.  Dkt. 132-1 at 35-36.  On November 11, 2009, she billed 5.4 hours to six different tasks including drafting e-mails, "reviewing" research, reading e-mails exchanged between other counsel, following up on "various items," and internal conferences.  Dkt. 132-1 at 37.  The often vague nature of Ms. Fryda's time entries, and the inability to identify time spent on administrative – as opposed to legal – tasks, justifies an across the board reduction to DeTemple's fee request.

Similarly, in a March 30, 2009 time entry, timekeeper Mr. Hoefle billed 6.1 hours to various unrelated tasks including deposition preparation, document review, sending emails, scheduling, and preparing an unspecified memo.  Dkt. 132-1 at 14.  Hoefle, a partner, thus appears to perform associate-level tasks such as document review.  Without a more detailed breakdown, neither Leica nor the Court can know whether that time was appropriate, whether more or less time was devoted to partner-level task such as deposition preparation, or whether any of those tasks were performed inefficiently.  Even more disconcerting, and justifying an across-the-board reduction, are time entries such as Mr. Hoefle's entry from June 25, 2015 [Dkt. 132-1 at 142] billing 6.4 hours to "[w]ork on trial matter" and

"examine and review witnesses." *See Ceres Envtl. Servs.*, 476 Fed. App'x at 203 (admonishing fee requests for time detailed as generally as "continuing work on case"). In a June 27, 2015 entry, Mr. Hoefle billed even more time – 6.8 hours – to even more general work; "Trial prep, witnesses, etc." Dkt. 132-1 at 142.

Another Schroeder attorney Mr. Menzel similarly block-billed an inordinately large number of hours, with individual time entries directed toward more than a half-dozen tasks and replete with duplicative general descriptions making it impossible for Leica to determine the reasonableness of the time compared to the individual tasks performed. In a June 21, 2012 entry, for example, Mr. Menzel billed 8.1 hours to six different tasks including reviewing e-mails, drafting e-mails, reviewing a deposition transcript, and attending a telephone conference. Dkt. 132-1 at 84. In a March 13, 2013 entry, Mr. Menzel billed 3 hours to *eight different tasks*, including drafting a voicemail, drafting an e-mail, legal research, conferences, and drafting.[11] Dkt. 132-1 at 91.

DeTemple also seeks recovery for attorney's fees of over $30,000.00 for time spent by his corporate and real estate lawyer, John Yentz— a non-litigator who is apparently Schroeder's client origination and relationship attorney for

---

[11] Notably, in several immediately preceding time entries, Mr. Menzel also billed time for drafting the same e-mail and voicemail message. Dkt. 132-1 at 91. Such duplication is common throughout the Schroeder invoices.

DeTemple.  Dkt 135 at ¶ 4; *see also* **Exhibit 1** attached hereto (Yentz's web bio).

A majority of Mr. Yentz's time entries are devoted to reviewing e-mails and

internal meetings with the counsel who were actually working on the case.  *See*

Dkt. 132-2 at 15-17 (including over 60 entries devoted to "meet[ing] with" or

"conference[ing] with" other counsel, and a majority of the remaining entries

devoted to "review[ing] e-mail," "review Complaint," "review brief," and the like).

There is no evidence corporate counsel Mr. Yentz was needed on this litigation.

The foregoing examples are representative of a pervasive problem in the

Schroeder invoices.  The sheer volume of timekeepers billing to the matter creates

redundancy that must be accounted for.[12]  And, given the large blocks of time

attributed to widely varying tasks, Leica cannot accurately assess the

reasonableness of the time.  In light of Schroeder's block billing, Leica

conservatively requests an across-the-board reduction in fees by at least ten (10)

percent, recognizing the difficulty in parsing out veiled inefficiencies in counsel's

---

[12] It is "well recognized that when more lawyers than are necessary are assigned to
a case, the level of duplication of effort increases and case law disallows fee
requests for hours that are 'excessive, redundant, or otherwise unnecessary.'" *Gatti
v. Cmty. Action Agency of Greene Cty., Inc.*, 263 F. Supp. 2d 496, 518 (N.D.N.Y.
2003), *aff'd*, 86 Fed. App'x 478 (2d Cir. 2004); *Flagstar Bank, FSB v. Hochstadt*,
Case No. 08-80765-Civ-Hurley/Hopkins, 2010 U.S. Dist. LEXIS 29203 (S.D. Fla.
Mar. 4, 2010) (even in a case considered more complicated than is typical, "the
Court also finds that the case did not warrant the work of eleven attorneys and
three paralegals, and thus, the case was overstaffed.").

work.  *See Ceres Envtl. Servs.*, 476 Fed. App'x at 203 (affirming 10% reduction);

*B & F Sys*, 2014 U.S. Dist. LEXIS 90504 at *34-35 (same).  Leica also requests

that the court deduct Mr. Yentz's time *en toto* as entirely redundant.

###### B.   Schroeder's Self-Imposed Reductions for Unsuccessful Claims are Inconsistently Applied and Warrant Further Reductions.

DeTemple recognizes that hours spent on unsuccessful claims must be

excluded from a fee award.[13]  And his counsel purports to have eliminated time

entries associated with unsuccessful claims [Dkt. 131-1 at 10]; a close review of

the Schroeder block-billed invoices, however, demonstrates that is not the case and

eliminating all or even a majority of time billed for unsuccessful claims is nearly

impossible.  Further reductions are warranted where self-imposed reductions for

unsuccessful or unrelated claims are applied inconsistently.  *B & F Sys.*, 2012 U.S.

Dist. LEXIS 90504 at * 36 (reducing fee award by an additional 5% for

inconsistent self-imposed deductions).  In *B & F Sys.*, the court observed that:

> [C]ertain entries were reduced or eliminated by counsel as being
> "*unsuccessful*" or "unrelated." However, it is not clear why certain
> *reductions* were made, or how the amounts of the deductions were
> determined. Some entries are reduced by half, others by one-third.
> ***Further, the reductions are not consistent***. For instance, Plaintiff
> filed a motion for preliminary injunction that was only partially

---

[13] *See, e.g.*, *Lindevig v. Dairy Equip. Co.*, 150 Wis. 2d 731, 742 (Wis. Ct. App. 1989) ("allowing attorney fees only to those customers who prevail on some but not all defenses on which they were successful" applies in WFDL cases, and plaintiffs were not entitled to fees related to unsuccessful damages claims).

successful. ***Some of the time entries relating to the preliminary injunction were reduced as being unsuccessful, while other entries relating to the same matter are left untouched***. Compare April 24, 2008 entry to April 28, 2008 entry. Similarly, ***while counsel states that time relating to Plaintiff's defense of Defendants' counterclaims was excluded that was not consistently done.***

*Id.* (emphasis added). The same lack of clarity exists here as to why and how the Schroeder firm made deductions.

DeTemple contends counsel "eliminated entries for routine secretarial and clerical time, entries that were not sufficiently descriptive, entries for tasks not useful, necessary, or related to the litigation, and entries related to unsuccessful portions of the litigation." Dkt. 131-1 at 10. He further alleges "counsel excluded entries relating to Plaintiff's contract-based claims, entries related to the retention, use, and motion practice pertaining to expert witnesses, and entries relating to Plaintiff's unsuccessful Motion in Limine…." *Id.* Just as in *B & F Sys.*, however, counsel's adjustments are *inconsistent* and *unsupported*. Entries for excluded categories are left intact; and where counsel deducted portions of entries for excluded categories, no rationale exists for amounts deducted.

First, DeTemple contends that counsel deducted time associated with his damages expert Tracy Coenen ("Coenen"), who the Court precluded from testifying at trial under *Daubert*. The Schroeder invoices and summary spreadsheet detailing the fees requested, however, include multiple entries billing

17

time for damages expert work.[14]  Further, where counsel has deducted time for work with Coenen, the method for reducing time is unclear.  For example, in a March 27, 2012 time entry, Ms. Lindner billed 9.3 hours to "[p]repar[ing] for and defend[ing] client and expert witness depositions."  Dkt. 132-1 at 75.  Counsel deducted 3.5 hours from the entry – only a third of the total time for preparing a witness that would support the <u>majority</u> of Mr. DeTemple's damages claim.  Importantly, the immediately preceding entry for Ms. Lindner from March 26, 2012 billed 7.2 hours for work including "[p]repare for depositions of client and expert," yet counsel did not subtract <u>any</u> time from the request. Dkt. 132-1 at 75.

Similarly, the jury declined to award DeTemple <u>any</u> of the lost profits damages he sought in this case; yet counsel has removed only some entries associated with the lost profits claim from the fee request.  *See* Dkt. 132-1 (maintaining lost profit fee requests for the following:  Time entry for Mr. Menzel for 6/22/12; time entries for Ms. Fryda for 12/22/08, 12/11/09; time entry for Mr. Yentz for 2/24/12; and time entries for Mr. Kruse for 6/26/15; 7/4/15; 7/5/15; and 7/6/15).  Even a cursory review of DeTemple's fee request summary for Schroeder

---

[14] *See* Dkt. 132-1 (Time entries for attorney Ms. Lindner for 3/19/12, 3/20/12, 3/26/12, 3/27/12, 4/11/12, 4/13/12; time entries for Ms. Fryda for 3/10/09, 5/20/09, 5/28/09; time entry for Mr. Yentz for 1/27/12; and time entries for Mr. Hoefle for 1/29/09, 1/30/09, 2/2/09, 3/10/09, 1/12/10, 1/22/10, 1/23/12, 2/23/12, 4/12/12, 5/13/15, 6/15/15, and 7/1/15).

[Dkt. 132-2] yields over 20 time entries directed toward damages, for which some or all work performed was or may have been directed toward the lost profits claim.

DeTemple also asserts he no longer seeks fees for his unsuccessful breach of contract claims; yet Schroeder invoices *still* reflect numerous charges associated with those claims.  *See* Dkt. 132-1 (Time entry for Mr. Menzel for 6/19/12; time entries for Ms. Fryda for 2/8/09, 5/19/09, 11/27/09, 2/9/10; time entry for Mr. Hoefle for 12/15/09).  DeTemple's fee request also maintains charges related to his unsuccessful motion *in limine* on the issue of good cause for termination—an issue which the jury decided in Leica's favor.  *See* Dkt. 132-1 (Time entry for Ms. Fryda for 3/30/09; time entries for Mr. Kruse for 6/11/15 and 6/23/15).

Finally, at least ten entries counsel claims to have deducted from the request appear on the list summarizing time for which DeTemple seeks compensation.[15] Rather than requiring the Court to conduct a line-by-line analysis of the individual time entries contained in 150 pages of Schroeder invoices in order to "guess" what each entry means, and recognizing that counsel did attempt to eliminate some inappropriate charges, Leica conservatively requests at least an additional five (5) percent across-the-board reduction to the Schroeder fee request to account for the

---

[15] *Compare* Dkt. 132-1 with Dkt. 132-2 (reflecting fee requests for Ms. Fryda on 4/22/09, 11/12/09 (requesting full amount when supposedly reduced); Mr. Yentz on 7/7/09, 10/22/09, 2/24/12; Mr. Kruse on 6/11/15; Mr. Hoefle on 1/12/09, 2/12/09, 2/1/12, 6/15/15(requesting full amount when supposedly reduced)).

inability to properly deduct time associated with DeTemple's unsuccessful claims and unnecessary work.  *See B & F Sys.*, 2012 U.S. Dist. LEXIS 90504 at * 36 (5% additional reduction for inconsistent self-imposed deductions).

### C.   Bovis' Fees are Excessive and Should be Reduced.

DeTemple employed local counsel from Bovis, Kyle, Burch & Medlin, LLC ("Bovis") who submitted its invoices.  Dkt. 133 and 133-1.  Bovis' invoices demonstrate that an extraordinary amount of the billed time pertains to "receiving and reviewing" documents.  Leica acknowledges the necessity of local counsel; however, a vast majority of the Bovis' time entries required virtually no legal work at all and are redundant and should be reduced.  Courts should not award fees for hours that are "excessive, redundant, or otherwise unnecessary," *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999), and should deny fees for work that is "purely clerical in nature, such as contacting court reporters, and mailing, filing, and delivering documents..."  *Phillips 66 Co. v. Gish Oil Co.*, Civil Action No. 7:13-CV-63 (HL), 2015 U.S. Dist. LEXIS 36428 (M.D. Ga. Mar. 24, 2015) (reducing local counsel fees by 60%  where it "simply review[ed] work by other attorneys or duplicate[ed] tasks that had already been done.").

The compelling rationale of *Phillips 66 Co.* applies here to Bovis' local counsel role.  Bovis' invoices contain **<u>over 200</u>** individual entries billing time to

"receiving and reviewing" documents and correspondence.  Dkt. 133-1.  These entries reflect only a ministerial and cursory review of most documents, with little or no legal work required – yet Bovis staffed two attorneys (a partner and an associate) on the file who largely performed the same function.  *See* Dkt. 133-1 (including *extensive* time entries such as "receive and review mail," "receive and review Notice," "receive and review Leica's Certificate of Interested Persons," "receive and review mail and letters," "receive and review Cliff DeTemple's Notice of Filing Sealed Exhibits," and the like).

Even more bizarrely, Bovis' invoices reflect a charge – at attorney rates – for Mr. Bryant to drive from his local offices to the Courthouse for his cameo and only appearance at trial to *read the deposition transcript* of Mr. Robby Dudley. Dkt. 133-1 at 75.  Such charges are indicative of the excessiveness of Bovis' fees and Leica should not be required to pay the entire amount requested.  In light of the excessive charges for non-substantive work by multiple attorneys permeating nearly every time entry in the relevant invoices, Leica requests that fees for local counsel be reduced by fifty (50) percent.  *See Phillips 66 Co.*, 2015 U.S. Dist. LEXIS 36428 at * 13-14 (reducing local counsel fees by 60 percent).

### D.  Regas' Fees are Unsupported and Should be Excluded

Although Leica maintains that DeTemple is not entitled to *any* attorneys fees

for work performed by Regas, whose work was limited to the dismissed Wisconsin

case, the Regas fee request is otherwise woefully inadequate.  The Regas invoices

were submitted as an exhibit to a declaration made by DeTemple himself that

contains no information whatsoever regarding who performed the work,

qualifications, the reasonableness of individual rates, justifications for time spent,

and the like.  Dkt. 134 and 134-1.  *See ACLU*, 168 F.3d at 427 ("The fee applicant

bears the burden of establishing entitlement and documenting the appropriate hours

and hourly rates...That burden includes supplying the court with specific and

detailed evidence from which the court can determine the reasonable hourly rate.").

### E.    Leica's Proposed Alternative Lodestar Figure

Leica proposes the following revised maximum Lodestar amount:

| Attorney | Requested | Leica's Proposed Reductions | Reduced Total |
|---|---|---|---|
| Schroeder | $303,430.00[16] | Deduct $30,415.00 (Yentz) and reduce across-the-board by 15% (block billing, inefficiencies, inconsistent deductions) | $232,062.75 |
| Bovis | $31,374.85 | 50% (inefficiencies, duplication) | $15,687.43 |
| Regas | $9,603.87 | 100% (incurred in Wisconsin case, insufficient support) | $0.00 |
| | Total: $344,408.72 | **Revised Lodestar:** | **$247,750.18** |

[16] Total fee request for Schroeder fees minus $95,996.25 incurred prior to the October 29, 2009 Order dismissing all claims in the Wisconsin case.

**V.  DeTemple's Minimal Success Relative to his Damages Claim Requires an Additional Reduction of Attorneys' Fees by Sixty (60) Percent.**

The parties also agree that the Court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  Dkt. 131-1 at 2 (citations omitted).[17]  In fact:

> The Supreme Court has recognized that the quality of results obtained is an "important factor" in reaching a final fee amount. "Where . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."

*Erkins v. Bryan*, 785 F.2d 1538, 1545 (11th Cir. 1986) (finding "Plaintiffs certainly did not obtain excellent monetary results here as only 10% of the amount sought was actually obtained" and noting "counsel is obligated to consider the amount involved, the merits of the client's cause, and the chance of success").

The Court must consider DeTemple's relative success in awarding fees and reduce the lodestar amount accordingly:

> That a plaintiff succeeds in only a limited way does not strip him of prevailing-party status, but ***the degree of his success is "the most critical factor in determining the reasonableness of a fee award."*** *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (quotation marks omitted); *see also Hensley*, 461 U.S. at

---

[17] DeTemple cites *Wis. Compressed Air Corp. v. Gardner Denver, Inc.*, 07-cv-508, 2008 U.S. Dist. LEXIS 72409 (W.D. Wis. Sept. 22, 2008), stating WFDL cases apply same lodestar analysis as *Hensley* to "award an amount that is reasonable in relation to the results obtained." *Id.* at *11.  Plaintiff won damages far below estimate, and court reduced lodestar amount by 50%.  *Id* at 13.

> 436. . . If the district court finds that the number of hours claimed is unreasonably high, ***the court may either conduct an hour-by-hour analysis or it may reduce the hours using an across-the-board cut.***

*Bivins v. Wrap It Up, Inc.*, 380 Fed. App'x 888, 890-891 (11th Cir. 2010).  The Eleventh Circuit has found that a district court can abuse its discretion by not giving greater weight to a plaintiff's limited success in calculating a fee award. *See Andrews v. United States*, 122 F.3d 1367, 1375 (11th Cir. 1997).

More specifically, the Court should consider the damages a plaintiff sought in comparison to the damages actually received.[18]  In a case that is "not a civil rights action . . . the best--and perhaps only--measure of [a] plaintiff['s] success on their [ ] claims was their monetary damages award." *Andrews*, 122 F.3d at 1376. Following the case law trend providing for across-the-board reductions to the lodestar amount where a plaintiff has achieved minimal damages recovery relative to the amount sought, Leica requests that the Court reduce DeTemple's lodestar amount by an additional sixty (60) percent.  *See* note 18 (citing cases).

---

[18] *See e.g.*, *Popham v. Kennesaw*, 820 F.2d 1570, 1581 (11th Cir. 1987) (finding no abuse of discretion in reducing fees by 67% where jury awarded 1.5% of total damages sought); *Erkins*, 785 F.2d at 1545 (reducing fees by 60% not an abuse of discretion where plaintiff obtained 10% of amount sought); *Wis. Compressed Air Corp.*, 2008 U.S. Dist. LEXIS 72409 (reducing WFDL attorneys' fees by 50%); *Ojeda-Sanchez v. Bland Farms*, 6:08-cv-96, 2013 U.S. Dist. LEXIS 149013 (S.D. Ga. Oct. 16, 2013) (reducing fees by 60% where plaintiff recovered 2.3% of damages); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1353 (S.D. Fla. 2007) (reducing fees by 50% where plaintiff recovered 0.5% of damages).

DeTemple, over Leica's objections, sought over $2.8 Million in damages, including over $2.6 Million in lost profit damages—a theory that had no merit, counsel should have known had little or no chance of success, and the jury soundly rejected.  The jury awarded only $167,000 for inventory.  The inventory award was not discretionary but instead mandated upon finding that the WFDL applies to the parties' relationship.  DeTemple's actual award – the best measure of his degree of success – totals only 5.9% of the damages sought.  DeTemple also suffered the dismissal of a substantial portion of his case when the Court dismissed his breach of contract claims.  DeTemple did not achieve anything close to "excellent" results.  Given DeTemple's minimal success relative to his total claim, the Court should reduce the revised lodestar amount of $247,750.18 by sixty (60) percent to **$99,100.07.**

Respectfully submitted this 10th day of August, 2015.

/s/  John M. Bowler
John M. Bowler, GA Bar No. 071770
john.bowler@troutmansanders.com
Lindsay Mitchell Henner, GA Bar No. 272310
lindsay.henner@troutmansanders.com
TROUTMAN SANDERS LLP
600 Peachtree Street, NE, Suite 5200
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
ATTORNEYS FOR DEFENDANT LEICA
GEOSYSTEMS INC.

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing memorandum, including footnotes, has been

prepared in Times New Roman 14 font and is in compliance with Local Rule 5.1.

By:   /s/ *John M. Bowler*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| CLIFF DETEMPLE D/B/A TURNING POINT SYSTEMS GROUP, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 1-09-CV-03272-RWS |
| LEICA GEOSYSTEMS INC., | ) ) | |
| Defendant. | ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2015, the undersigned caused a true and correct copy of **"Defendant Leica Geosystems, Inc.'s Opposition to Plaintiff Cliff DeTemple's Motion for Attorney's Fees"** to be served upon all counsel of record via the Court's CM/ECF filing system.

By:   /s/ *John M. Bowler*

John M. Bowler
Georgia Bar No. 071770
TROUTMAN SANDERS LLP
600 Peachtree Street, NE, Suite 5200
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900
**john.bowler@troutmansanders.com**